Law Office of Corey A. Pingle
Corey A. Pingle SBN 305289
Email: capingle@pinglelaw.com
Matthew C. Briggs SBN 310449
Email: mbriggs@pinglelaw.com
9550 Warner Ave #250-06
Fountain Valley, CA 92708
Telephone: (714) 593-2306
Facsimile: (650) 394-3132

Attorneys for PLAINTIFF
MARTINEZ ANDRE GILES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT COURT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| MARTINEZ ANDRE GILES, on behalf of himself and on behalf of all persons similarly situated,<br><br>PLAINTIFF,<br><br>vs.<br><br>CANUS CORPORATION, a California Corporation; PG&E CORPORATION, a California Corporation; and DOES 1 through 50, inclusive.<br><br>DEFENDANTS. | **Case No.: 3:22-CV-03097-MMC**<br><br>**PLAINTIFF MARTINEZ ANDRE GILES' NOTICE OF MOTION AND AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF MATTHEW C. BRIGGS, ESQ; EXHIBITS; [PROPOSED] ORDER.**<br><br>**DATE:** Friday, November 15, 2024<br>**TIME:** 9:00 A.M.<br>**LOCATION: San Francisco Courthouse**<br>        **Courtroom 7 - 19th Floor**<br>        **450 Golden Gate Ave.**<br>        **San Francisco, CA 94102** |

**TO THE COURT, TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on November 15, 2024, or a date that is

acceptable with the court's calendar to which Plaintiff will provide further notice once this

Page i

PLAINTIFF MARTINEZ ANDRE GILES' NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS SETTLEMENT - 3:22-CV-03097-MMC

date is selected, in Courtroom 7 – 19th Floor of the United States Northern District Courthouse of California, located at 450 Golden Gate, CA 94102, Plaintiff MARTINEZ ANDRES GILES ("Plaintiff") will move for an order granting preliminary approval of the proposed class action settlement on the Plaintiff MARTINEZ ANDRES GILES ("Plaintiff") will move for an order granting preliminary approval of the proposed class action settlement on the terms and conditions set forth in the Joint Stipulation of Class Action Settlement and Release ("Settlement Agreement") between Plaintiff and Defendants CANUS CORPORATION and PG&E CORPORATION (hereafter collectively "Defendants"). A copy of the Settlement Agreement is attached as Exhibit A to the Declaration of Matthew C. Briggs, Esq.  Plaintiff will further move that the order specifically encompass the following:

1. Certify a class for settlement purposes only;

2. For purposes of settlement, designate Plaintiff MARTINEZ ANDRES GILES as Class Representative and Matthew C. Briggs and Corey A. Pingle of the Law Office of Corey A. Pingle as Class Counsel;

3. Confirm CPT Group as the Settlement Administrator;

4. Approve, as to form and content, the allocation form and class settlement notice attached as Exhibits "1" and "2," respectively, to the Settlement Agreement submitted in support of this motion;

5. Approve the form and content of the proposed method of participation in the settlement, requesting exclusion from the settlement, or objecting to the settlement;

6. Grant preliminary approval of the settlement; and

7. Set a Final Approval and Settlement Fairness Hearing.

1    The motion is based on this Notice and Motion, the Memorandum of Points and

2  Authorities, Declaration of Matthew C. Briggs, Esq., exhibits, all other pleadings and

3  papers on file in this action, and any oral argument or other matter that may be considered

4  by the Court.

9  Dated: November 15, 2024                    **Law Office of Corey A. Pingle**

12                                      By: / s / *Matthew C. Briggs /*

13                                      Matthew C. Briggs
                                        Corey A. Pingle
14                                      Attorneys for MARTINEZ ANDRES GILES
                                        and other Class Members

1

<u>**TABLE OF CONTENTS**</u>

I.      INTRODUCTION ..................................................................................1

II.     BACKGROUND AND PROCEDURAL HISTORY ...........................1

III.    SUMMARY OF LITIGATION ..........................................................2

        A.     The Parties ..............................................................................2

        B.     The Complaint and Allegations...............................................3

        C.     The Mediation, Exchange of Directly Relevant Informal
               Discovery, and Legal Analysis by Parties' Counsel …….……5

IV.     SUMMARY OF SETTLEMENT ......................................................6

        A.     Terms of Settlement .................................................................6

        B.     CPT Group as Settlement Administrator ................................11

        C.     Prosed Form of Notice to the Class .......................................12

        D.     Attorney's Fees and Costs ......................................................13

        E.     Enhancement/Service Award .................................................15

V.      ARGUMENT IN FAVOR OF PRELIMINARY APPROVAL .......16

        A.     The Proposed Class Satisfies the Requirements of Rule 23.......16

               1.     The Class Contains Sufficient Members to Meet the
                      Numerosity Requirement. ……………………………17

               2.     The Class's Claims Have Sufficient Questions of Fact and
                      Law Common to the Class to Establish the Commonality
                      Requirement.………………………………………..17

               3.     The Representatives Party's Claims are Typical of the
                      Class's Claims to Meet the Typicality Requirements of Rule
                      23. ……………………………………………..18

               4.     Class Representatives and Counsel Will Fairly and
                      Adequately Protect the Interests of the Class to Meet the
                      Requirements of Rule 23…………………………19

                      a.     *Named Plaintiff and his counsel do not have any
                             conflicts of interest with class members nor are there
                             any signs of collusion.* ……………………………19

                      b.     *Named Plaintiff and his counsel will prosecute the
                             action vigorously on behalf of the class*...……………20

        B.     The Proposed Settlement is Within The Range Of
               Reasonableness For Preliminary Approval ……………………21

PLAINTIFF MARTINEZ ANDRE GILES' NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS SETTLEMENT - 3:22-CV-03097-MMC

1.  The Proposed Settlement is a Reasonable Compromise Of Claims…………………………………………………..23

2.  The Settlement is Fair and Reasonable Based Upon A "Reasonable Appraisal" and Settlements of Similar Amounts in Actions in this District……………...............…………………………29

3.  The Settlement's Proposed Attorney's Fees Are Fair Based On the Common Fund Analysis As Well As A Lodestar Check……………..…………………………………………30

    a. Common Fund Percentage …………………………31

    b. Lodestar Check …………………………………...32

VI.    THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES………………………………………………………33

VII.    THE PROPOSED CLASS NOTICE OF SETTLEMENT SHOULD BE APPROVED………………………………………………………35

VIII.    PROPOSED SCHEDULE OF SETTLEMENT PROCEEDINGS…………...36
VIIII.  CONCLUSION…………………………………………………………37

# **TABLE OF AUTHORITIES**

## **Cases**

*Class Plaintiffs v. City of Seattle,* 955 F.2d 1268 (9th Cir. 1992) …….…………………...21

*City of Detroit v. Grinnell Corp.,* 495 F.2d 448(2nd Cir.1974)…………...........................29

*Cook v. Niedert,* 142 F. 3d 1004 (7th Cir. 1998) …………………………………………..16

*Cordy v. USS—Posco Indus.,* No. 12-553, 2013 U.S. Dist. LEXIS 108952, 2013 WL 4028627 at *3 (N.D. Cal. Aug. 1, 2013)…………………………………………………...21

*Estorga v. Santa Cara Valley Transp. Auth.,* 2019 U.S. Dist.  (N.D. Cal., Jan 4, 2019) …..25

*Flores v. Dart Container Corp.,* 2021 U.S. Dist. LEXIS 6897 ...……………………29, 30

*Fischer v. SJB-P.D., Inc.,* 214 F.3d 1115 (9th Cir. 2000) …………………………………...32

*Franckowiak v. Scenario Cockram USA, Inc.,* No. CV 20-8569-JFW(PVCx), 2020 U.S. Dist. LEXIS 252824 at *2 (C.D. Cal. Nov. 30, 2020)…………….………………………25

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011(9th Cir. 1998) …………………17, 18, 19, 20, 21

*Hansberry v. Lee*, 311 U.S. 32 (1940) ………………………………...…………………...19

*Hensley v. Eckerhart,* 461 U.S. 424 (1983) ………………………………………………..33

*In re Activision Sec. Litig.,* 723 F. Supp. 1373 (N.D. Cal. 1989) …………………...14, 15

*In re Bluetooth Headset Product Liab. Litig.,* 654 F. 3.d 935 (9th Cir. 2011) ……..14, 20, 30

*In re High-Tech Emp. Antitrust Litig.,* 2014 U.S. Dist. LEXIS 110064*14, 2014 WL 3917126, at *3 ………………………………………………………………..21, 22

*In re Nat'l Football League Players' Concussion Injury Litig*., 961 F. Supp. 2d 708 (E.D. Pa. 2014) ………………………………………………………………………..22

*In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ……..………21, 29

*Ismail v. Am. Airlines, Inc.*, No. CV221111DMGJPRX, 2023 U.S. Dist. LEXIS 122951, *5

1    (C.D. Cal. July 14, 2023) ……………………………………………………………..27

2    *Kastler v. Oh My Green, Inc.*, No. 19-cv-02411-HSG, 2022 U.S. Dist. LEXIS 71753, at *14

3    (N.D. Cal. Apr. 19, 2022) ………………………………………………………………22

4    *Linney v. Cellular Alaska Partnership,* 151 F.3d 1234 (9th Cir. 1998) ……..……………28

5    *Nielson v. Sports Auth.*, No. C-11-4724-SBA, 2012 U.S. Dist. LEXIS 168226, (N.D. Cal.

6    Nov. 27, 2012) …………………………………………………………………………22

7    *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615 (9th Cir. 1982) ………….21

8    *Pittmon v. Caci Int'l, Inc.*, 2023 U.S. Dist. LEXIS 213968, *22 (C.D. Cal. October 26,

9    2023)..……………………………………………………………………………………25

10   *Reyes v. Costco Wholesale Corp.*, 2024 U.S. Dist. LEXIS 111096, *20 (E.D. Cal. June 24,

11   2024) …………………………………………………………………………………..27

12   *Reynolds v. Direct Flow Med., Inc.,* No. 17-cv-00204-KAW, 2019 U.S. Dist. LEXIS

13   149865, 2019 WL 4168959 *3 (N.D. Cal. Sept. 3, 2019) …………………………………22

14   *Ries v. Ariz. Beverages USA LLC,* 287 F.R.D. 523 (N.D. Cal. 2012) ……………………..17

15   *Sonner v. Premier Nutrition Corp.,* 971 F.3d 834 (9th Cir. 2020) …………………...........25

16   *State of Fla. v. Dunne*, 915 F.2d 542 (9th Cir. 1990) ……………………………………..30

17   *Stovall-Gusman v. W.W. Granger, Inc.* No. 13-cv-02540-HSG, 2015 U.S. Dist. LEXIS

18   78671, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) ………………………22, 23 29

19   *U.S. Football League v. Nat'l Football League,* 887 F.2d 408 (2nd Cir.1989) ...................29

20   *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482 (E.D. Cal. 2010) ……………..............30

21   *Villanueva v. Morpho Detection, Inc.,* No. 13-cv-05390-HSG, 2016 U.S. Dist. LEXIS

22   35457, 2016 WL 1070523 *4 (N.D. Cal. March 18, 2016) …………………………………22

23   *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942 (9th Cir. 2007) ………………………32

24

25

## **Rules**

Fed. R. Civ. Proc. 23 ………………………………………………… 6, 17, 18, 19, 21, 33

## **Statutes**

29 C.F.R. §778.208 ……………………………………………………………….24

29 U.S.C. §207(e)(4) …………………………………………………………….24

29 U.S.C. §297(h) ……………………………………………………………….25

Cal. Lab. Code § 203…………………………………………………………….29

## **Treatises**

Newburg on Class Actions, (4ᵗʰ Ed.) §14.6 …………………………………………..15

PLAINTIFF MARTINEZ ANDRE GILES' NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS SETTLEMENT - 3:22-CV-03097-MMC

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff MARTINEZ ANDRE GILES ("Plaintiff") respectfully submits this memorandum in support of his motion for preliminary approval of the proposed class action settlement with the Defendants CANUS CORPORATION, and PG&E CORPORATION (hereafter collectively "Defendants"). Plaintiff seeks entry of a proposed order granting preliminary approval of the class settlement which: (1) preliminary approves the proposed settlement of the class action; (2) approves the form and method for providing notice and directs that notice to be given to members of the settlement class; (3) preliminary certifies the settlement class for settlement purpose; and (4) setting dates for a Fairness Hearing.

### II.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed the instant action on October 12, 2022, alleging that Defendants engaged in acts which were in violation of Cal. Bus. & Prof. Code § 17200, failed to provide proper rest periods, failed to pay accrued sick pay, and failed to reimburse employees for business expenses. (Third Amended Complaint.) Plaintiff also sought derivative penalties for inaccurate wage statements and ultimately payment of unpaid wages following separation of employment, including PAGA civil penalties.

On January 19, 2023, the Parties participated in a successful mediation session before respected class action mediator Jeffrey Krivis. During this mediation, the Parties reached the basic terms of a settlement, which was later finalized in the Settlement Agreement for which Plaintiff now seeks preliminary approval.

As consideration for this settlement, Defendant shall pay **$440,000.00,** (the "Gross Settlement Amount") to fund a settlement to be distributed to current employees and former employees. (**Briggs Dec.** Ex. A, Pg. 6¶3.1). The Gross Settlement Amount is inclusive of

payments to those class members who do not exclude themselves, the approved attorney's fees and costs, an approved Class Representative Service Award for Plaintiff, Martinez Andres Giles for service as class representative, approved claims administration costs, and LWDA payment. *(Id.)* The employer shall separately pay its FICA, FUTA, and SDI contributions. *(Id.)*

The New Settlement Amount is the portion of the Class Settlement Amount remaining after deductions of the Court-approved Class Counsel Award of no more than **$110,000.00**, in fees and not more than **$375.00**, in costs requested by Class Counsel, the Court-approved Settlement Administration Costs not to exceed **$10,000.00**, the Labor and Workforce Development Agency Payment of **$7,500.00** (75% of $10,000.00, allocated to LWDA), and the court approved class representative enhancement of no more than **$10,000.00** (**Briggs Dec.** Ex. A, pg. 29¶¶(2A-D). If all requested amounts are approved, the Net Settlement Amount is estimated to be **$299,625.00.** The distribution to Class Members is on a pro rata basis based on the number of compensable workweeks.

As of the time of mediation, Defendants estimated that there were approximately 160 non-exempt hourly employees in California during the class period. Accordingly, Plaintiff estimates that class members will receive an average payment of **$1,853.91** ($299,625.00 ÷ 160). As set forth below, Plaintiff believes this is a reasonable settlement based on both the size of the class and strength of its claims.  Plaintiff respectfully requests Twenty-Five (25%) of the Gross Settlement Amount be awarded as attorney's fees in this matter.

### III.    SUMMARY OF LITIGATION

#### A.  The Parties

Defendant Canus Corporation is a California licensed Utility Contractor, as well as a source of specialized technical contracting. Canus provides quality solutions to utilities

nationwide. CANUS Corporation is headquartered in California with operations offices throughout California, Colorado and Pennsylvania with over 600 full-time employees. CANUS Corporation provides experienced personnel to support its Clients' Transmission and Distribution electrical line and substation construction and maintenance inspection needs. (https://www.linkedin.com/company/canus-corporation).

Defendant PG&E is Pacific Gas and Electric Company (PG&E), a subsidiary of PG&E Corporation (NYSE: PCG), and one of the largest combined natural gas and electric companies in the United States. Based in San Francisco, its 25,000 employees work throughout our Northern and Central California service area, stretching from Eureka to Bakersfield and from the Pacific Ocean to the Sierra Nevada. (https://jobs.pge.com/about-us#:~:text=Based%20in%20San%20Francisco%2C%20our,Ocean%20to%20the%20Sierra%20Nevada).

Mr. Giles worked for Defendants as a non-exempt hourly employee, as a Class II Construction Coordinator/Inspector, from approximately May of 2015 to June 2021. Defendants estimated that there were approximately 160 non-exempt hourly employees in California during the class period at the time of mediation.

**B.  The Complaint and Allegations**

The operative Third Amended Complaint, which the proposed settlement is based upon was filed on October 12, 2022. The Third Amended Complaint alleges: (1) Unfair Competition in Violation of Cal. Bus. & Prof. Code §§ 17200, Et Seq.; (2) Failure To Provide Required Rest Periods In Violation Of Cal. Lab. Code §§ 226.7 And The Applicable IWC Wage Order; 3. Failure To Provide Accurate Itemized Statements In Violation Of Cal. Lab. Code § 226; 4. Failure To Provide Wages When Due In Violation Of Cal. Lab. Code §§ 201, 202 and 203; 5. Failure To Pay Accrued Sick Pay Wages When Due In Violation Of Cal.

Lab. Code §§ 201, 202, and 246; 6. Failure To Reimburse Employees For Required Expenses In Violation Of Cal. Lab. Code § 2802; 7. Wrongful Termination In Violation Of Public Policy; and 8. Civil Penalties Pursuant to Labor Code 2699, Et. Seq., 210, 221, 226(A), 226.7, 558(A)(1)(2), 2802, California Code of Regulations, Title 8, Section 11040, Subdivision 5(A)-(B).

Plaintiff's claims are premised primarily on the allegation that Defendants did not pay employees for all time worked, for failing to provide complaint rest periods, for failing to pay owed sick time, and failing to pay their employees for business expenses incurred on behalf of the Defendants. Defendants required their employees to work off-the-clock to perform work related tasks such requiring class/PAGA members ("Members") to create a log of hours worked and submit it to the company before Monday. Members were also required to perform mandatory screening questions prior to logging into work. Specifically, in December of 2020, Defendants implemented a 3-page Company Management System Covid-19 Safety Policy. Moreover, Defendants engage in the practice of requiring Plaintiff and Members to perform work off-the-clock, because Defendants, as a condition of employment, required these employees to submit to mandatory temperature checks for COVID-19 screening prior to clocking into Defendants' timekeeping system for the workday.

As a result, Plaintiff and other class members forfeited overtime compensation because they would have to work without their time being accurately recorded and without being paid compensation at the applicable overtime rates.  Members were not allotted company time to complete these tasks and had to do it off-the-clock. Defendants implemented these policies such that Members were not paid wages for all time worked, including sick pay and overtime wages, such that in the aggregate employees were underpaid

wages as a result of Defendants' pattern and practice of forcing its employees to work off-the-clock. Accordingly, Defendants failed to pay Plaintiff and Members in accordance with the California Labor Code and Wage Orders. Further, Plaintiff claims Defendants did not pay employees for all hours worked as they utilized quarter-hour rounding.

Defendants denied the allegations and contended that employees were properly compensated.

### C. The Mediation, Exchange of Directly Relevant Informal Discovery, and Legal Analysis By Parties' Counsel.

The Settlement is the product of extensive, arms-length, and vigorously contested settlement discussions. The Parties have undertaken significant investigation of the facts and law during the pendency of this action. Following the filing of the case, the parties agreed to exchange the information informally and privately mediate the matter. Prior to the mediation, the parties exchanged extensive data, information, and documents concerning Plaintiff's allegations, including production of meal and rest period policies, meal and rest period waivers, and timecards in Excel spreadsheets of the equivalent of over 1,617 pages of data when printed, and other various Member data. Plaintiff hired a consultant to evaluate the timecards for violations. Plaintiff's counsel has reviewed data entries in employment, payroll, and human resources documents, with time records data related to Plaintiff's and the Class' employment with the Defendants.

On January 19, 2023, the Parties, Plaintiff then represented by previous counsel BLUMENTHAL NORDREHAUG BHOWMIK DE BLOUW LLP, participated in a mediation session before mediator Jeffrey Krivis, an experienced complex litigation mediator. The mediator actively assisted the Parties in settlement discussions and the Parties reached a tentative agreement to settle this matter. The Settlement was reached after

extensive informal discovery as well as extensive negotiations conducted through the mediator. The mediation ultimately resulted with the Parties reaching the basic terms of a settlement, which was later finalized in the Settlement Agreement for which Plaintiff now seeks preliminary approval.

Class Counsel represent that they have conducted a thorough investigation into the facts of this case and have diligently pursued an investigation of the Members' claims against Defendants, including research of the applicable law and the potential defenses and review of relevant documents including Defendants' time records and policy documents, and average hourly rate of non-exempt employees.

Plaintiff and Class Counsel concluded, after taking into account the sharply disputed factual and legal issues involved in this action, the risks attending further prosecution, and the benefits to be received pursuant to the compromise and settlement of the action as set forth in this agreement, that settlement on the terms set forth herein is in the best interest of the representative Plaintiff and the Class Members and is fair and reasonable.

Defendants have concluded that there are benefits associated with settling this action. Defendants have denied, and continue to deny, each of the claims and contentions in this action.  After taking into account the sharply disputed factual and legal issues involved in the action, the expense and burden of protected litigation, and the desire to put controversy to rest, Defendants believe that settlement on the terms set forth in this agreement is in their best interests and is fair and reasonable.

## IV.    SUMMARY OF SETTLEMENT

### A.  Terms of Settlement

Subject to Court approval pursuant to Fed. R. Civ. Proc. Rule 23, the Parties have agreed to settle the Lawsuit by agreement upon the terms and conditions and for the

consideration set forth in the Settlement Agreement a copy of which is attached to the Declaration of Matthew C. Briggs ("Briggs Dec.") as Exhibit "A".

A summary of the key terms of the Settlement is as follows:

1.  Class Member(s): means a member of the Class, as either a Participating Class Member or Non-Participating Class Member (including a Non-Participating Class Member who qualifies as an Aggrieved Employee).

2.  Gross Settlement Amount means FOUR HUNDRED AND FORTY THOUSAND DOLLARS AND ZERO CENTS ($440,000.00) which is the total amount DEFENDANTS have agreed to pay under the Settlement except as provided in **Paragraph 9** below. The Gross Settlement Amount will be used to pay Individual Class Payments, Individual PAGA Payments, the LWDA PAGA Payment, Class Counsel Fees, Class Counsel Expenses, Class Representative Service Payment and the Administrator's Expenses.

3.  Attorneys' Fees and Costs means payment of up to **$110,000.00**, (25% of the Gross Settlement) to Class Counsel for attorneys' fees and up to **$375.00,** for Class Counsel's litigation expenses. To date, Class Counsel have worked and incurred expenses on the Action without payment.

4.  Class Representative Service Payment means payment of up to **$10,000.00**, for Plaintiff Martinez Andres Giles as a Class Representative Award for filing the Action, working with Class Counsel and representing the Class. A Class Representative Award will be the only monies Plaintiff will receive other than Plaintiff's Individual Class Payment and any Individual PAGA Payment.

5.  Settlement Administration Costs means payment of up to **$10,000.00,** to the Administrator for services administering the Settlement.

6. <u>LWDA Payment</u> means payment of up to **$10,000.00**, for PAGA Penalties, allocated 75% to the LWDA PAGA Payment and 25% in Individual PAGA Payments to the Aggrieved Employees based on their PAGA Period Pay Periods.

7. <u>Net Settlement Amount Distributed to Class Members</u> means the Gross Settlement Amount less the Class Representative Service Payment, Class Counsel's awarded attorney's fees and expenses, the PAGA Payment, and the Settlement Administrator's Fees and expense (**Briggs Dec.** Ex. A, Pg. 3¶1.32). The Net Settlement Fund will be distributed entirely to all Class Members who do not submit a timely and valid request for exclusion. Employer payroll taxes are separate from and not included in the Net Settlement Fund. No portion will revert to Defendants under any circumstances. (*Id.* Ex. A, Pg. 6¶3.1). If all requested costs and fees are approved, the estimated Net Settlement Amount is estimated to be **$299,625.00**.

| | |
|---|---|
| Gross Class Settlement Amount | $440,000.00 |
| (Attorney's Fees) | ($110,000.00) |
| (Attorney's Costs) | ($375.00) |
| (Class Representative Service Payment) | ($10,000.00) |
| (Settlement Administration Costs) | ($10,000.00) |
| (LWDA Payment) | ($10,000.00) |
| **Net Settlement Fund** | **$299,625.00** |

8. <u>Distribution Formula to the Participating Class Members</u> means the Administrator will calculate Individual Class Payment by dividing Net Settlement Fund by the total number of Workweeks worked by all Participating Class Members, and (b) multiplying the result by the number of Workweeks

worked by each individual Participating Class Member.

9. <u>Distribution Formula of Individual PAGA Payments</u> means the Administrator will calculate Individual PAGA Payments by (a) dividing $1,250.00, by the total number of PAGA Pay Periods worked by all Aggrieved Employees and (b) multiplying the result by the number of PAGA Period Pay Periods worked by each individual Aggrieved Employee.

10. <u>No-Reversion of Uncashed Funds</u> means for any Class Member whose Individual Class Payment check or Individual PAGA Payment check is uncashed and cancelled after the void date, the Administrator shall transmit the funds represented by such checks to the California Controller's Unclaimed Property Fund in the name of the Class Member thereby leaving no "unpaid residue" subject to the requirements of CCP Section 384, subd. (b). The Parties, Class Counsel and Defense Counsels represent that they have no interest or relationship, financial or otherwise, with the California Controller's Unclaimed Property Fund.

11. <u>Class Release and Waiver of Claims by the Class Members</u>: The class release provides for a limited, and not a general release, of all "Released Class Claims" from February 17, 2021[1], through April 19, 2023 (the "Class Period") **Briggs Dec.** Pg. 2¶4, as follows:

12. "Released Claims" are defined as any and all claims, debts, liabilities, demands,

---

[1] In *Collins v. Canus Corp.*, Los Angeles Superior Court Case #30-2018-01019194, a settlement and release were obtained in this matter. The original class period included was from September 18, 2014 - February 17, 2021.

actions, or causes of action of every nature and description that were alleged in the Third Amended Complaint or which could have been alleged based on the factual predicates in said Complaint. The Released Claims include, without limitation, all claims for unpaid wages, including, but not limited to:

1. Unfair Competition in Violation of Cal. Bus & Prof. Code §§ 17200, *et seq*; 2. Failure to provide required rest periods; 3. Failure to provide accurate itemized statements; 4. Failure to pay accrued sick pay wages; 5. Failure to reimburse employes for required expenses 6. Waiting time penalties; 7. Civil Penalties and attorneys' fees and costs. The Released Claims include all such claims arising under the California Labor Code (including, but not limited to, sections 200, 201, 202, 203, 204, 210 (only limited as to claims based on Labor Code Section 204), 216, 218, 218.5, 218.6, 223, 225, 225.5, 226, 226.7, 510, 512, 516, 558, 1174, 1174.5, 1194, 1194.2, 1197, 1197.1, 1198, and 2698 *et seq. as to identified Labor Code Section* and 2699 *et seq.;* the applicable Wage Orders of the California Industrial Welfare Commission as to the facts alleged in the Complaint and all claims that could have been pled based on the alleged  facts in said Complaint; Cal. Bus. and Prof. Code §17200, *et seq.;* the California Civil Code, including but not limited to §§3287, and California Code of Civil Procedure §1021.5. The Class Released Claims include any and all claims under the Private Attorneys General Act, Cal. Lab. Code §2698 *et seq.* ("PAGA") that were or could have been assessed in the Litigation based on the facts alleged or are reasonably related to those asserted.   The PAGA Released Claims include PAGA Claims assessed during the PAGA settlement period of September 15, 2020, through

April 19, 2023. In addition, Settlement Class Members who endorse their settlement checks waive and release any claims under the Fair Labor Standards Act, 29 U.S.C. § 20 I *et seq.* ("FLSA") arising during the Settlement Class Period and reasonably related to any or all of the aforementioned claims. This release excludes the release of claims not permitted by law. (**Briggs Dec**., Ex. A pg.10¶¶6.1-6.3.)

### B.  CPT Group as Settlement Administrator

The parties have agreed to utilize the services of CPT Group, Inc. ("CPT"), a leading provider of notice and settlement class action administration services and which has been appointed as the third-party administrator by all major courts. Throughout its history, CPT has disbursed billions of dollars in settlement funds and serviced tens of millions of class members while administrating approximately 5,000 cases. CPT offers a wide range of class action administrative services for developing, managing, and executing all stages of integrated notice plans and settlements. This includes pre-certification and discovery mailings, class-certification mailings, claims processing and administration, data management, data reporting, settlement fund administration, legal noticing campaigns, website design, and web hosting.

CPT Group, Inc. is an experienced and qualified class action claims administrator who provides class action administration services. (**Briggs Dec**., Exhibit B; CPT Group Curriculum Vitae). CPT is a provider of notice and settlement class action administration services since 1984 and has been appointed as a third-party administrator by all major courts in California and a number of United States District Courts. *(Id)*

Plaintiff's counsel made several inquiries to various firms including CPT Group, Inc., Phoenix Class Action Administration Solutions and Epiq Class Action Solutions.

Plaintiff found that CPT Group was most reasonably priced and responsive to inquiries regarding its services solutions.

### C.  Proposed Form of Notice to the Class

<u>Notice of Settlement</u>: Within fourteen (14) days after the Court grants preliminary approval of the settlement, Defendants will provide the Settlement Administrator with the Class Members' names, last known addresses, dates of employment and Social Security Numbers as well as any other information requested by the Settlement Administrator. (**Briggs Dec.** Ex. A, Pg. 8¶4.2; Pg. 8¶8.4.2.) Within three (3) business days of receipt of the Class List and Data, the Settlement Administrator shall mail the Notice Packet to the Class Members, in English and Spanish via first-class regular U.S. mail. (*Id.* Ex. A Pg. 8¶8.4.3)

The proposed notice of settlement is intended to effectively reach the class based on their contact information provided to Defendant during their employment and by way of returned Notice Packets or of a "skip trace." (*Id.* Ex. A, Pg. 9¶4.4.2; Pg. 12¶8.4.3). On each returned as undeliverable Notice Packet, the Administrator will review the Class list and Data to determine whether the Class member is currently employed, and if so, will inform the Parties. Defendants will promptly investigate and, if possible, provide an updated mailing address for re-mailing of the Notice Packet for any current employee. (**Briggs Dec.** Ex. A, Pg. 9¶4.4.2; Pg. 12¶8.4.3).

The proposed notice of settlement will be sent in plain language (both English and Spanish) to explain the nature of the Litigation, a summary of the substance of Settlement, the class definition, the formula to calculate a Class Member's Individual Settlement Payment, the deadline to submit an objection to the Settlement or a request for exclusion from the Settlement and/or to dispute the basis for a Class Member's estimated Individual Settlement Payment, and the date, time and place for Final Approval Hearing. (*Id.* Ex. A,

Ex. 1). The Class Members will also be given the opportunity to dispute the workweeks allocated to them using the Allocation Form which will be sent with the Notice of Settlement (*Id.* Ex. A, Ex. 2).

Request for Exclusion:  Any Class Member, who wishes to be excluded from the settlement, must complete, sign, date, and timely return the Exclusion Request to the Settlement Administrator to exclude themselves from the Settlement, setting forth their name, address, last four digits of their Social Security number, email address and/or telephone number and the following or similar statement: "I wish to exclude myself from the settlement reached in the matter of Giles vs. Canus Corporation and PGE Corporation, Case Number No. 3:22-cv-03097-MMC," within **60 calendar days** after the date that the Settlement Administrator first mails the Notice Packets. (*Id.* Ex. A, Pg. 13¶8.5)

Objections: Any Class Member wishing to object to the approval of this settlement shall inform the Court in writing of his or her intent to object within 60 calendar days of mailing of the class notice (plus an additional 14 days for Class Members whose Class Notice was remailed. (*Id.* Ex. A, Pg. 14¶8.7) Any written objection must be signed and include: (1) the full name of the Class Member; (2) the dates of employment; (3) the last four digits of the Settlement Class Members' Social Security number; (4) the basis for the objection; (5) whether the Class Member intends to appear at the Final Settlement Approval Hearing; and (6) an explanation of the basis for the Class Members objection. (**Briggs Dec.** Ex. A, Pg. 27¶6).

**D.  Attorney's Fees and Costs**

As noted above, Class Counsel will request a payment of fees up to **$110,000.00**, which is Twenty-Five Percent (25%) of the gross settlement, for the time spent litigating this matter. (**Briggs Dec.** Ex. A, Pg. 7¶3.2.2). Class Counsel will also seek up to **$375.00**, for

Class Counsel Costs. (*Id.*) The requested fee is fair compensation for undertaking complex, risky, expensive, and time-consuming litigation on a contingent fee basis, especially in light of the substantial benefits achieved by Plaintiff's counsel for the Class Members.

The 9th Circuit has recognized that one appropriate method for awarding attorney's fees in class actions is to award a percentage of the "common fund" created as a result of the settlement. "While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method. See *In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010). "Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Bluetooth*, 654 F.3d at 942 (noting that 25% of the fund is considered the "benchmark" for a reasonable fee).

Several courts have expressed frustration with the alternative "lodestar" approach for deciding fee awards, which usually involves wading through voluminous and often indecipherable time records. *In re Activision Sec. Litig. (*N.D. Cal 1989) 723 F. Supp. 1373, 1375. The percentage approach is preferable to the lodestar because: (1) it aligns the interests of class counsel and absent class members; (2) it encourages efficient resolution of the litigation by providing an incentive for early, yet reasonable settlement; and (3) it reduces the demands on judicial resources. *Id*. at 1378-79. The Ninth Circuit now routinely uses the percentage of the common fund approach to determine the award of attorney's fees. *In re*

1  *Pacific Enters. Sec. Litig.* (9th Cir. 1995) 47 F.3d 373, 378-79 [approving attorney's fees of

2  33%].)

3       Plaintiff's counsel requests fees equal to Twenty-Five Percent (25%) of the Class

4  Settlement Amount and falls well within the range of reasonableness. Historically, courts

5  have awarded percentage fees in the range of 20% to 50%, depending on the circumstances

6  of the case. (*See In re Activision Sec. Litig.,* 723 F. Supp. At 1378.) According to Professor

7  Newberg: "No general rule can be articulated on what is a reasonable percentage of a

8  common fund…Usually 50 per cent of the fund is the upper limit on a reasonable fee award

9  from a common fund, in order to assure that fees do not consume a disproportionate part of

10  the recovery obtained for the class, though somewhat larger percentages are not

11  unprecedented." (Newburg on Class Actions (4th Ed.), §14.6).

12       Class Counsel have borne, and continue to bear, the entire risk and cost of litigation

13  associated with this class action on a pure contingency basis. The factual and legal issues

14  posed in this case were highly disputed, and there were also risks as to whether or not a class

15  might be decertified or whether Plaintiff might succeed at trial, leaving a large number of

16  putative class members unlikely to receive any recovery.

17       The Court should preliminarily approve the requested attorney's fees and costs,

18  which are justified by the results achieved, the complexity of the issues, the difficulty of the

19  case, and the great risk undertaken by Class Counsel. The requested attorney's fees and costs

20  will not be opposed by Defendants and are well within established guidelines. The Class

21  Members will also be notified of the requested amount and have an opportunity to object to

22  the requested fees.

23       **E. Enhancement/Service Award**

24       Plaintiff and Class Counsel will request, and Defendants agree not to oppose,

25

payment by Defendants from the Class Settlement Amount of **$10,000.00**, to Plaintiff as a service payment. (**Briggs Dec.** Ex. A, Pg. 7¶3.2.1). The named Plaintiff is entitled to an enhancement award for his service as Class Representative and the risks in connection with that role. Enhancement awards in overtime cases typically range from $5,000.00, to $40,000.00, although some awards are higher. Often, multiple class representatives receive awards in the higher range. *See e.g., Cook v. Niedert* (7th Cir. 1998) 142 F. 3d 1004, 1016; *Thornton v. East Texas Motor Freight* (6th Cir. 1974) 497 F.2d. 416, 420 ("We also think there is something to be said for rewarding those drivers who protect and help to bring rights to a group of employees who have been the victims of discrimination.").)

Here, the requested enhancement is relatively modest, reasonable, and should be preliminary approved. The requested award of **$10,000.00**, is a little more than **2.27 percent**, of the total settlement ($440,000.00). Plaintiff has performed considerable services on behalf of the Class during the litigation by seeking an attorney, participating throughout litigation, searching for and providing information related to his employment and the employment conditions, spending time in meetings with counsel to get a better understanding of his work environment and requirements, provided needed information for mediation, settlement discussions, and potential class certification, and approved the settlement on behalf of all class members. (**Briggs Dec**. pg. 8¶26.)

## IV.   ARGUMENT IN FAVOR OF PRELIMINARY APPROVAL
### A.   The Proposed Class Satisfies the Requirements of Rule 23.

Before determining the fairness of a class action settlement, the Court must first "ascertain whether the proposed settlement class satisfies the requirements of Rule 23(a) of the Fed. R. of Civ. Proc. applicable to all class actions, namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation."

1.    <u>The Class Contains Sufficient Members to Meet the Numerosity Requirement.</u>

The Class contains sufficient members in order to meet the numerosity requirement of Rule 23. Numerosity is met if the potential class members are so numerous that the alternative – joinder of individual plaintiffs – is impracticable. Fed. R. Civ. Proc. 23(a)(1) *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012) ("While there is no fixed number that satisfies the numerosity requirement, as a general matter, a class greater than forty often satisfies the requirement, while one less than twenty-one does not")

The class contains 160 members for both the claims pursuant to the class action as well as 180 members with regards to the claims pursuant to PAGA. (**Briggs Dec.** Pg. 2¶3)

2.    <u>The Class's Claims Have Sufficient Questions of Fact and Law Common to the Class to Establish the Commonality Requirement.</u>

The Class's claims are based upon similar questions of fact and law to meet the commonality requirement of Rule 23. A class has sufficient commonality if there are questions of fact and law which are common to the class. Fed. R. Civ. Proc. 23(a)(2). The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3). Indeed, Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class. *Hanlon v. Chrysler Corp.*, (1998) 150 F.3d 1011, 1019.

Here, the class claims are based on similar violations of the law specifically the California Labor Code, as well as the California Business & Professions Code as stated in the Third Amended complaint.

The claims contain similar questions of facts specifically with regards to whether the

1   class members were properly paid overtime due, whether Defendants failed to provide rest

2   breaks to class members, and whether the wage statements provided were in violation of

3   California law due to the omitted payment of wages and rest breaks as alleged in the Class

4   claims for these violations. (**Briggs Dec.** Pg. 4¶12– Pg. 7¶22). The additional class claims

5   for waiting time penalties as well PAGA penalties are derivatives of these claims and thus

6   share commonality to these facts and laws. Therefore, the class contains sufficient

7   commonality of facts and law to meet the requirements of Rule 23.

8       3.   <u>The Representatives Party's Claims are Typical of the Class's Claims to Meet the</u>

9           <u>Typicality Requirements of Rule 23.</u>

10      The typicality prerequisite of Rule 23(a) is fulfilled if "the claims or defenses of the

11  representative parties are typical of the claims or defenses of the class." Fed. R. Civ. Proc.

12  23(a)(3). Under the rule's permissive standards, representative claims are "typical" if they

13  are reasonably co-extensive with those of absent class members; they need not be

14  substantially identical. *Hanlon v. Chrysler Corp.*, 150 F.3d at 1020.

15      Here, Class Representative Martinez Andre Giles was a lineman working in Northern

16  California.  He and members of the class were subjected to Defendants, unlawful practices

17  and policies. While Mr. Giles initially had additional individual claims such claims have

18  been resolved such that the class can adequately be resolved.  Mr. Giles and the class

19  members were all required to work in excess of eight hours in a day and/or forty hours in a

20  week and were not paid for hours performing work on behalf of the Defendants.  Similarly,

21  Class members were deprived of statutorily mandated 10-minute rest breaks and premium

22  pay (one hour of pay) for these missed breaks.  Finally, Mr. Giles' claims for Waiting time

23  penalties are common to at least 160 class members and 180 aggrieved PAGA members

24  based on Plaintiff's expert's review of Defendants documents produced in informal

25

discovery which substantiate the claims for overtime, missed rest breaks and failure to provide proper wage statements. (See **Briggs Dec**. Ex. D). Therefore, the Class meets the requirements for commonality pursuant to Rule 23.

4. <u>Class Representatives and Counsel Will Fairly and Adequately Protect the Interests of the Class to Meet the Requirements of Rule 23.</u>

In order to meet class certification, the representative parties must show they will fairly and adequately protect the interests of the class. Fed. R. Civ. Proc. 23(a)(4). To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them. *See Hansberry v. Lee*, 311 U.S. 32, 42-43, 85 L. Ed. 22, 61 S. Ct. 115 (1940) . Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?

Examination of potential conflicts of interest has long been an important prerequisite to class certification. That inquiry is especially critical when a class settlement is tendered along with a motion for class certification. *Amchem* instructs us to give heightened scrutiny to cases in which class members may have claims of different strength. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)

a. *Named Plaintiff and his counsel do not have any conflicts of interest with class members nor are there any signs of collusion.*

Plaintiff and class members do not have any conflicts of interest with class members because the settlement is not for current and future litigation but for past claims as delineated in Plaintiff's Third Amended Complaint.

Additionally, there is no collusion between Named Plaintiff, Class Counsel and

Defendants. Further, when a settlement agreement is negotiated prior to formal class certification, the court must be particularly vigilant for signs of collusion, as "there is an even greater potential for a breach of fiduciary duty owed the class during settlement." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Such signs include: (1) counsel receiving a disproportionate distribution of the settlement, or where a class receives no monetary distribution but class counsel is amply rewarded; (2) where the parties negotiate a "clear sailing" arrangement for the payment of attorney's fees separate and apart from class funds; and (3) where there is a reversion of fees to the defendant.

Here, counsel for Plaintiff receives a distribution consistent with accepted percentages in this court, twenty-five percent. There is a clear sailing arrangement for the payment of attorney's fees however this amount is not more than other percentages granted in this district. Finally, there is no reversion of fees to the Defendants in this matter. Due to the difficulties with Plaintiff's claims as discussed below the settlement amount is reasonable due to uncertainties with Plaintiff's claims. Accordingly, the Court should find no conflicts of interest or collusion with Plaintiff's counsel.

      *b. Named Plaintiff and his counsel will prosecute the action vigorously on behalf of the class.*

Plaintiff and his counsel have and will prosecute the action vigorously on behalf of the class. Although there are no fixed standards by which "vigor" can be assayed, considerations include competency of counsel and, in the context of a settlement-only class, an assessment of the rationale for not pursuing further litigation. *Id. Hanlon,* at 1021. Plaintiff's counsel have actively pursued the class action including filing a motion to remand to state court, opposing Defendants' motion for judgement on the pleadings, drafting two amended complaints, attending all day mediation and resulting creation of a Memorandum

of Understanding ("MOU").

Plaintiff's counsel is competent having practiced primarily employment law for over a decade and are well within the means to continue to pursue litigation in this matter if necessary. Plaintiff's counsel have and will continue to represent their clients in litigation. Having only been partnered for a year have taken over 40 cases into various forms of litigation with the majority of continuing to be active litigation cases. Accordingly, Plaintiff and his counsel respectfully request that this Court find Plaintiff and his counsel will prosecute the action vigorously on behalf of the class.

**B. The Proposed Settlement is Within The Range Of Reasonableness For Preliminary Approval.**

The Court's review of this proposed settlement is authorized by Fed. R. Civ. Proc. Rule 23(e). This requires the Court "to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Id. (citing *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982)).

The purpose of the preliminary evaluation of class action settlements is to determine only whether the proposed settlement is within the *range of reasonableness* and, therefore, whether notice to the class and the scheduling of a formal fairness hearing are warranted. *In re High-Tech Emp. Antitrust Litig.*, 2014 U.S. Dist. LEXIS 110064*14, 2014 WL 3917126, at *3 (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)) (citing *Cordy v. USS—Posco Indus.*, No. 12-553, 2013 U.S. Dist. LEXIS 108952, 2013 WL 4028627, at *3 (N.D. Cal. Aug. 1, 2013)).

In determining whether the proposed settlement falls within the range of reasonableness, perhaps the most important factor to consider is "plaintiffs' expected recovery balanced against the value of the settlement offer." Id. (quoting *In re Nat'l Football League Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014)); see also *Nielson v. Sports Auth.*, No. C-11-4724-SBA, 2012 U.S. Dist. LEXIS 168226, 2012 WL 5941614, at *6 (N.D. Cal. Nov. 27, 2012). Determining whether the settlement falls in the range of reasonableness also requires evaluating the relative strengths and weaknesses of the plaintiffs' case; it may be reasonable to settle a weak claim for relatively little, while it is not reasonable to settle a strong claim for the same amount. See *In re High-Tech Emp. Antitrust Litig.*, 2014 U.S. Dist. LEXIS 110064, 2014 WL 3917126.

In *Kastler v. Oh My Green, Inc.*, No. 19-cv-02411-HSG, 2022 U.S. Dist. LEXIS 71753, at *14 (N.D. Cal. Apr. 19, 2022), ($500,000 in gross settlement amount was found to be 'within the range of reasonableness' in light of the risks and costs of litigation). See also, e.g., *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 U.S. Dist. LEXIS 78671, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (granting final approval of a net settlement amount representing 7.3% of the plaintiffs' potential recovery at trial); *Reynolds v. Direct Flow Med., Inc.*, No. 17-cv-00204-KAW, 2019 U.S. Dist. LEXIS 149865, 2019 WL 4168959 *3 (N.D. Cal. Sept. 3, 2019) (granting final approval for a settlement amount representing 13% of plaintiffs' estimated full-verdict value); *Villanueva v. Morpho Detection, Inc.*, No. 13-cv-05390-HSG, 2016 U.S. Dist. LEXIS 35457, 2016 WL 1070523 *4 (N.D. Cal. March 18, 2016) (citing cases).

Here, Plaintiff and his counsel have concluded it was reasonable to enter into the proposed settlement in the gross amount of **$440,000.00**. Plaintiff's counsel's proposed award of attorney's fees in the amount of **twenty-five percent** (25%) is reasonable based on

the work of Plaintiff's counsel, the results as each class member will receive on average in excess of **$1,853.91**. and the fact that the benefit is higher per member than similar cases which have been approved for settlement in this district within this range of percentage of the plaintiffs' potential recovery at trial. *Supra*. *Stovall-Gusman.*

There are significant legal uncertainties associated with cases such as this as they can be factually complex and require protracted litigation to resolve. A settlement is not judged solely against what might have been recovered had Plaintiff prevailed at trial, nor does the settlement have to provide 100% of the damages sought to be fair and reasonable. (*Linney v. Cellular Alaska Partnership* (9th Cir. 1998) 151 F. 3d 1234, 1242).

Defendants have contested and continue to contest liability for the claims asserted in the action. Although Defendants believe that the ultimate success would be unlikely on Plaintiff's claims, they nevertheless agreed to attempt resolution of the case through mediation to avoid the expense, distraction, and uncertainty of protracted litigation. Continuing with litigation may further reduce Plaintiff's claims. As the majority of Plaintiff's damages result from derivative claims the entire amount of damages may be eliminated if Defendants can successfully prove that Plaintiff's claims are without merit.

1.  The Proposed Settlement is a Reasonable Compromise of Claims.

To assist the Court with determining if the proposed settlement is within a range that is fair, reasonable, and adequate, Plaintiff's counsel analyzed the value of pleaded class allegations. As stated above, the settlement was reached only after exchanging discovery prior to mediation and conducting legal analyses of both Plaintiff and Defendants' theories.

**Unlawful Business Practices (Failure to Pay Proper Wages)**: Plaintiff alleged that Defendants failed to pay Plaintiff's and other class members' overtime at 1.5 times their "regular rate of pay" for all hours worked in excess of eight hours in a day and 40 hours in

a week. Plaintiff alleges the "regular rate of pay" should have included non-discretionary incentive compensation based on the employees' performance for Defendants, including but not limited to shift differential wages for working undesirable shifts, cash in lieu of benefits, and other non-discretionary incentive bonus wages. This practice was similarly conducted by Defendants when calculating their double time wage, or wages due to Plaintiff and other employees for exceeding 12 hours of work in a day or if the employee worked seven consecutive days for hours exceeding eight on the seventh day of consecutive work.

Based on Plaintiff's expert's analysis approximately 5,693 pay periods were affected. Plaintiff's expert calculated 92.5% of employees and 63.6% of pay periods have overtime or double time paid and additional remunerations. The damages are calculated as the differences between the earnings assuming overtime and double time premiums are paid at the regular rate incorporating ILB and Subsistence and the actual payout. This resulting in approximately ≈ $2,221,862 in damages without interest. With interest the amount totals $2,447,233. (See **Briggs Dec**. Ex. D). This amount assumes 100% liability and success which is unlikely as discussed, further below.

Defendants claimed that company policies set forth in the applicable collective bargaining agreement provided for proper payment of overtime and double time pursuant to federal law and that In Lieu Benefits (ILB), Union ILB, and Subsistence earnings are not included in the regular rate calculations on the pay period level. *See* 29 U.S.C. § 207(e)(4); 29 C.F.R. §778.208 ("regular rate" under the FLA does not include certain bonuses, gifts, and compensation in the form of health care benefits). Notably, California overtime laws do not apply as it was previously found by this Court to be preempted. Furthermore, Defendants contend that overtime and double time paid to employees completely offset any overtime owed under the Fair Labor Standards Act. Extra compensation provided to employees for

work may be credited **against** any overtime premiums owed under the FLSA.  See 29 U.S.C. section 297(h); *Estorga v. Santa Cara Valley Transp. Auth.,* Case No. 16-cv-02668-BLF, 2019 U.S. Dist. LEXIS 1918 (N.D. Cal., Jan 4, 2019). Canus paid it's non-Local 1245 employees daily overtime of at least 1.5 times the regular hourly rate for all hours worked over eight hours in a day and 40 hours in a week and provided for double the regular hourly rate for holidays and weekend work. Canus also paid double overtime for all overtime worked by employees covered by CBA.

Moreover, Defendants contend that Plaintiff cannot recover alleged unpaid FLSA overtime pursuant to the Unfair Competition Law because Plaintiff cannot plausibly allege that he lacks an adequate remedy at law. See *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (Holding that a plaintiff requesting restitution under the UCL show they lack an adequate remedy at law); *Franckowiak v. Scenario Cockram USA, Inc*., No. CV 20-8569-JFW(PVCx), 2020 U.S. Dist. LEXIS 252824 at *2 (C.D. Cal. Nov. 30, 2020) (UCL plaintiffs must "allege some facts suggesting that damages are insufficient to make them whole."). Here, Plaintiff could have pursued a direct cause of action for unpaid overtime under the FLSA. Their decision not to do so does not mean Plaintiff lacked an adequate remedy under the FLSA. See *Pittmon v. Caci Int'l, Inc.*, 2023 U.S. Dist. LEXIS 213968, *22 (C.D. Cal. October 26, 2023) (Dismissing UCL claim due to failure to show plaintiffs lacked an adequate legal remedy where the "UCL claim seeks the same relief, based on the same factual allegations, as the underlying California Labor Code and FLSA claims.")

**Rest Break Violations:** Plaintiff alleged that rest breaks were not received, Plaintiff and other employees could not leave the job site, and that Defendants instructed their employees to not take a rest break even when the employees worked a shift of 3.5 hours or more.  Further, Plaintiff alleged that second rest breaks were not received for the same

reasons described above, and that Defendants did not have a policy in place for their employees to receive a rest break when they worked a shift of seven hours or more. Additionally, Plaintiff alleges a third rest break was not provided when an employee worked over 10 hours in a workday. Finally, Plaintiff alleged that when Plaintiff and other California based non-exempt hourly employees did not receive a rest break, there was no policy or procedure in place where Plaintiff or the other Class Members would receive a rest break premium pay. Plaintiff's expert estimated approximately **$2,834,870.00,** in damages (39,685 estimated shift violations x ~$66.77≈ $2,649,755+$185,114 in interest) in rest period damages. Using a "realistic" appraisal of liability based to be **$1,324,883.73** (**Briggs Dec.**, Pgs. 4-5¶13).

Defendants contend that company policies and practice provided for proper rest breaks, and that employees of Canus were provided with 15-minute rest breaks, and that if an employee failed to take a rest break entirely or took a short rest break, it was their choice and they had waived the right to take either a timely rest or a rest break at all. Further, many employees, including construction coordinators/inspectors like Plaintiff, had broad autonomy over their own schedules and could take rest breaks whenever and wherever they chose, and their light schedules allowed them to take more than the allotted rest breaks, and that neither Plaintiff nor other hourly employees ever complained about being prevented the opportunity to take a lawful rest break. (**Briggs Dec.**, Pg. 5¶14)

**<u>Failure to Pay Accrued Sick Wages When Due Penalties:</u>** Plaintiff alleges that Defendants failed to pay Plaintiff and other employees sick time pay because it was not paid at Plaintiff's and other employees "regular hourly rate." Plaintiff alleges that the "regular rate of pay" should have included non-discretionary incentive compensation based on the employees' performance for Defendants, including but not limited to shift differential wages

for working undesirable shifts, cash in lieu of benefits, and other non-discretionary incentive bonus wages. By failing to calculate the sick pay rates including the non-discretionary incentive bonus wages Defendants have incurred penalties pursuant to Lab. Code §§ 200-203, inclusive. (**Briggs Dec.**, Pg. 5¶15)

Defendants contend that Plaintiff cannot maintain a claim for waiting time penalties based on alleged underpaid sick pay because sick pay are not "wages".  Additionally, Plaintiff's claim fails because employees who were not subject to a collective bargaining agreement were paid sick leave in accordance with California and did not receive any non-discretionary incentive compensation. Even assuming, *arguendo*, that sick pay qualifies as wages, under California law it would not vest as wages until it is used. See *Ismail v. Am. Airlines, Inc.*, No. CV221111DMGJPRX, 2023 U.S. Dist. LEXIS 122951, *5 (C.D. Cal. July 14, 2023) (finding that plaintiff could seek waiting time penalties for *used* sick pay.) The allegations in the Second Amended Complaint are insufficient to show that that Defendants underpaid used sick leave. See *Reyes v. Costco Wholesale Corp.*, 2024 U.S. Dist. LEXIS 111096, *20 (E.D. Cal. June 24, 2024) (Plaintiff's claim for waiting time penalties dismissed in part because plaintiff "makes only conclusory allegations that defendant underpaid used sick leave".)  **Briggs Dec.**, Pg. 5¶16.

**Failure to Provide Accurate Wage Statements Penalties:** Plaintiff alleged that based on the foregoing, wage statements inaccurately stated the number of hours worked and wages earned.   Plaintiff estimated approximately **$640,000.00** in penalties (160 approximate employees within penalty period x $4,000.00 ≈$640,000.00). (**Briggs Dec**. Pg. 6¶19)

Because this claim was derivative it was subject to the defenses to the claims alleged above.   In addition, Defendants argued that Plaintiff could not demonstrate that the

Defendants knowingly and intentionally provided employees with inaccurate wage statements. Defendants also calculated wage statement damages to be only **$312,250.00**. (**Briggs Dec**. Pg. 6¶20)

**Failure to Reimburse Business Expenses:** Plaintiff alleges that Defendants failed to reimburse its employees for costs which include but are not limited to, the cost associated with the use of their personal cellular phones, personal computers and home offices. Plaintiff estimated that approximately **$126,026.00,** (2,297 Months X $50 = $114,850 + $11,176 in interest) in damages for these expenses. Again this assumes 100% liability. Plaintiff's counsel proposes a realistic appraisal of liability for this claim would be a 50% discount or **$63,013.00**. (**Briggs Dec**. Pg. 6¶17).

Defendants argue that it maintained a lawful expense reimbursement policy and practice and provided Plaintiff and other employees with sufficient equipment to perform all necessary tasks and duties on behalf of Defendants without the need for Plaintiff or other employees to use their personal property without reimbursement. This included providing employees with computers, FastTrak Transponders, fuel cards, "MiFi," phones/tablets, and test equipment. Furthermore, Defendants claim that they had written policies and procedures for Plaintiff and other employees to request reimbursement and these instruments were used. (**Briggs Dec**. Pg. 6¶18)

**Waiting Time Penalties:** Defendant provided Plaintiff with an estimate of 70 former employees who separated employment with Defendant. Accordingly, Plaintiff estimated **$1,437,224.25**, in waiting time penalties {[70 terminated employees x 30 days x (8 hours per day x the average rate of pay ($66.77) = $1,121,736.00] + [(70 terminated employees X 30 days X 1.5 hours per day X 1.5 X the average rate of pay) = $315,488.25]}

Because this claim was derivative, it was subject to the same defenses applied to the

underlying claims as alleged above.  In addition, Plaintiff would have needed to show that the violations were willful. (Lab. Code § 203, subd. (a); CACI No. 2704) Defendant asserted Plaintiff could not show Defendant willfully withheld owed wages in the manner intended to be protected by the Labor Code.

Defendant's maximum potential exposure is estimated by Plaintiff's expert to be $13,179,120.00. Plaintiff's counsel applying a "realistic appraisal" as the court in *Flores v. Dart Container Corp.*, 2021 U.S. Dist. LEXIS 6897, *33 permitted.  of Defendant's liability submits the realistic liability to be **$4,362,794.11** (See **Briggs Dec**. Pg. 7¶23). The proposed settlement amount is **$440,000.00**, which is approximately **10.09%** of the reasonable potential recovery. This puts the settlement within the range of reasonableness in this district. (see *Supra. Stovall-Gusman*). While this amount is a lower percentage than some cases granted in this district it should be noted that "the fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 & n. 2 (2nd Cir.1974), overruling on other grounds recognized by *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 415 (2nd Cir.1989). Plaintiff's estimates of the value of damages are "soaking wet" and are based on 100% recovery for all claims.

2. The Settlement is Fair and Reasonable Based Upon A "Reasonable Appraisal" and Settlements of Similar Amounts in Actions in this District.

The per class member settlement amount in this matter is fair as the proposed settlement would result in an above average per class member recovery than other class actions alleging employment claims such as Plaintiff. In determining whether a settlement agreement is substantively fair to class members, the court must balance the value of

expected recovery against the value of the settlement offer. See *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

As such, Defendant's maximum potential exposure is estimated at **$13,179,120.00** (See **Briggs Dec**. Pg. 7¶23). The proposed settlement amount is **$440,000.00**, which is approximately 3.34% of the potential recovery. However, Plaintiff's estimates of the value of damages are "soaking wet" and are based on 100% recovery for all claims. However, in *Flores v. Dart Container Corp.,* 2021 U.S. Dist. LEXIS 6897, *33 the court recognized that 100% recovery is never feasible and instead acknowledged that a "reasonable" appraisal of the value of the claims was appropriate.

Defendant's maximum potential exposure is estimated by Plaintiff's expert to be $13,179,120.00. Plaintiff's counsel applying a "realistic appraisal" as the court in *Flores, Id.* permitted.  of Defendant's liability submits the realistic liability to be **$4,362,794.11** (See **Briggs Dec**. Pg. 7¶23). The proposed settlement amount is **$440,000.00**, which is approximately **10.09%** of the reasonable potential recovery. This puts the settlement within the range of reasonableness in this district.

   3. <u>The Settlement's Proposed Attorney's Fees Are Fair Based On The Common Fund Analysis As Well As A Lodestar Check.</u>

The Court has discretion to use either a lodestar or percentage of the common fund analysis to evaluate a fee request.  *In re Bluetooth*, 654 F.3d at 942. Under a common fund calculation, "the court makes a fee award on the basis of some percentage of the common fund." *State of Fla. v. Dunne*, 915 F.2d 542, 545 n.3 (9th Cir. 1990). "The typical range of acceptable attorneys' fees in the Ninth Circuit is one-fifth to one-third of the total settlement value, with 25% considered the benchmark." *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482, 491 (E.D. Cal. 2010).

*a. Common Fund Percentage*

To evaluate whether the requested percentage is reasonable, courts may consider a number of factors, including the results obtained for the class; the risk undertaken by class counsel, including the complexity of the issues; the length of the professional relationship between class counsel and the plaintiffs; and the market rate for similar cases, with a lodestar cross-check. *Bowen v. Jea Senior Living Health & Welfare Ben. Plan, LLC*, No. 2:20-cv-2318-KJN, 2023 U.S. Dist. LEXIS 218839, at *31 (E.D. Cal. Dec. 8, 2023)

As stated above, Plaintiff's counsel have pursued this matter actively opposing Defendants' dismissal of this case, including a motion for judgment on the pleadings, motion to dismiss as well as filing numerous amended complaints to keep the class viable.

Due to class counsel's efforts, if the proposed settlement is granted class members will enjoy an average settlement amount of **$1,853.91**, per member. (**Briggs Dec**. Pg. 10¶29). While Plaintiff believes in the merits of his case, he also recognizes the inherent risks of litigation and understands the benefit of the Class receiving settlement funds immediately as opposed to delaying payment or risking an unfavorable decision on summary adjudication/judgement, motion for class certification, at trial and/or the damages awarded, and/or appeal all of which have potential to eliminate any relief for class members on claims which are suitable for class treatment. If approved the settlement will provide all class members who do not opt out the opportunity to receive compensation for unpaid wages for which they might otherwise never pursue or even be aware of.

Both Plaintiff's and Defendants' counsel are experienced in employment, wage and hour and class action matters. Law Office of Corey A. Pingle is well-regarded as a firm that almost exclusively handles employment matters. (**Briggs Dec**. Pgs. 10-12,¶¶30-37). Class Counsel are experienced and qualified to evaluate the class claims and to evaluate settlement

1  versus trial on a fully informed basis, and to evaluate the viability of the defenses.  Counsel

2  on both sides share the view- endorsed by an experienced class action mediator – that this is

3  a fair and reasonable settlement in light of the complexities of the case, the state of the law

4  and uncertainties of litigation and trial, and the benefit the settlement confers on the class.

5  Given the risks inherent in litigation, in class certification proceedings, and in the defenses

6  asserted, this settlement is fair, adequate and reasonable and in the best interests of the class.

7       *b. Lodestar Check*
Plaintiff's counsel bears the responsibility of establishing its requested fees and costs

8
9  were reasonably necessary to achieve the results The fee applicant bears the burden of

   establishing that the fees and costs were reasonably necessary to achieve the results obtained.

10
11  See *Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) . This can be done with

    records documenting the tasks completed and the amount of time spent.  *Hensley v.*

12
13  *Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983); *Welch v.*

    *Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007) .

14
15      Plaintiff's current counsel is small boutique law firm comprised of attorneys Corey

    A. Pingle Matthew C. Briggs. Mr. Pingle has been practicing since 2015 and almost

16
17  exclusively worked Plaintiff's side employment law for the last seven years. Accordingly,

    his hourly rate is $450 per hour. (**Briggs Dec. ¶¶**34-35).

18
19      Mr. Briggs similarly has been practicing solely Plaintiff's side employment law with

    an emphasis in litigation for the last five years.  My regular hourly rate is $450 per hour.

20
21      Plaintiff's counsel regularly keeps time records in the course of business and

22  throughout this case.  To date Plaintiff counsel has incurred 135.1 hours of attorney time

23  which equates to **$58,378.50,** in attorney's fees and **$77.31,** costs (See **Briggs Dec**. ¶37, Ex.

    E).

24

25

Plaintiff's counsel reasonable expects an additional 100 of hours of attorney time to be spent in this matter including attending the upcoming in person hearing for approval of this motion, if approved completing the administration of notice to class and PAGA members and finally to complete the final approval motion and hearing in this matter. In total, current counsel's actual billing to date currently at **$58,378.50,** of attorney's fees have been accumulated. With the additional 100 hours of expected attorney time ($45,000.00) to finalize this matter, Plaintiff's counsel will likely incurred over **$103,000.00,** in attorney's fees.

Given the complexity and number of hours devoted to this case given the boutique nature of Plaintiff's counsel any hours expended upon this case takes away from other cases that Plaintiff's counsel may be working on. Therefore, with the request of a 2.0 multiplier making the total amount of fees would be in excess of **$200,000.00.** Accordingly, the lodestar check shows that Plaintiff's requested attorney's fees in the amount of twenty-five percent (25%) is reasonable.

## V. THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES

The requirements under Fed. R. Civ. Proc. 23 are all met for the purposes of certifying this case for settlement purposes:

- Numerosity: The settlement class consists of approximately 160 class members and 180 aggrieved employees in the claims under PAGA. Thus, the requirement of numerosity is met because joinder of 160 individual plaintiffs into a single case is otherwise impracticable in light of the circumstances of this case.

- Ascertainability: The proposed "Settlement Class" is easily ascertainable based on Defendants' own payroll records.

- <u>Typicality:</u> The claims of the class representative are typical of the claims of the class members as a whole. The named Plaintiff suffered the same alleged violations (e.g. minimum, overtime wages, meal and rest period violations, and derivative claims) as the class as a whole did and thus, the claims of the named Plaintiff fairly represent the claims of the class as a whole.

- <u>Adequacy:</u> Plaintiff has proven to be an adequate class representative. He has conducted himself diligently and responsibly in representing the class in this litigation, understands his fiduciary obligations, and has actively participated in the prosecution of this case. (Briggs Dec. ¶32.) Plaintiff has spent hours in meetings and conferences with counsel to provide counsel with a better understanding of his work environment and requirements. *(Id.)* Furthermore, Plaintiff does not have any interest that is adverse to the interests of the other class members. *(Id.)* Moreover, proposed class counsel is adequate to represent the class for settlement purposes. (Briggs Dec. ¶¶24-29.)

- <u>Commonality/Predominance:</u> Many common issues of law and fact unite the class. The common questions of law and fact include, but are not limited to:

  1) Whether Defendants illegally failed to provide overtime wages for all hours worked over eight (8) hours in a workday or 40 hours in a workweek;

  2) Whether Defendants illegally failed to provide proper rest periods;

  3) Whether Defendants failed to provide the class members with accurate itemized wage statements;

  4) Whether Defendants failed to provide the Class Members with their final wages after separation from employment within the statutory time period;

  5) Whether Defendants violated Business & Professions Code Section 17200, et seq. by their wage and hour practices, furnishing of correct itemized wage statement

practices, indemnification practices, as well as, payment at the time of separation practices;

6) Whether Class Members are entitled to unpaid wages, penalties, interest, fees, and other relief in conjunction with his claims;

7) Whether, as a consequence of Defendants' unlawful conduct, the Class Members are entitled to restitution, and/or equitable relief, and

8) Plaintiff anticipates that Defendants' affirmative defenses will raise additional common issues of fact and law.

- <u>Superiority</u>: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Joinder of all members of the proposed class is impractical. Class treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously for settlement purposes without the unnecessary duplication of effort and expense that numerous individual actions would engender. Moreover, because a number of the class members are current employees, the fear of retaliation further supports superiority of class-wide relief because that fear of retaliation often discourages victims from seeking legal redress while currently employed by the same employer.

## VI. THE PROPOSED CLASS NOTICE OF SETTLEMENT SHOULD BE APPROVED

The proposed Class Notice and Allocation Form in the form attached as Exhibit 1 and 2, respectively, to Exhibit A to the Declaration of Matthew C. Briggs should be approved for dissemination to the Class Members. This notice informs the Class of the terms of the settlement, of their right to receive their proportional share of the settlement and the manner in which to do so, of their right to request exclusion or to comment upon or to object to the

settlement, and of their right to appear in person or by counsel at the final approval hearing and to be heard regarding approval of the Settlement.  Adequate periods of time are provided by each of these procedures. Furthermore, the date and time of the Final Approval hearing will be inserted in the Class Notices and will identify the information upon which the Class Member's share will be calculated as well as the estimated amount he or she can expect to receive if he or she chooses not to exclude him or herself.

Notice of Final Judgment: Within sixty (60) days of final approval, the Settlement Administrator will send the Participating Class Members a postcard to notify the Class Members of final judgment.

## VII. PROPOSED SCHEDULE OF SETTLEMENT PROCEEDINGS

The Parties propose the following schedule for the fairness hearing and final proceedings:

| Event | Timing |
| --- | --- |
| Preliminary Approval Order | November 15, 2024 |
| Last Day for Defendants to provide Class Member data to the Settlement Administrator | November 29, 2024 (14 calendar days after entry of preliminary approval order) |
| Notice Date: last day for Settlement Administrator to mail the Class Notice | December 13, 2024 (14 calendar days after receipt of class list) |
| Deadline for Objections, and Exclusion Requests | February 7, 2025 (60 calendar days from last date to mail) |
| Deadline for Motion to File Approval Hearing on final approval of class action | April 4, 2025 |

| settlement | (21 calendar days from the deadline for Objections, and Exclusion Requests) |
|---|---|

## VIII. CONCLUSION

The proposed class action settlement is within the range of reasonableness. Members receive an amount higher than similar actions in the district and the attorney's fees awarded are within the range of reasonableness based on that result. It will result in fair and immediate payment to Class Members; it is non-collusive; and it was achieved as the result of informed, extensive, and arms' length negotiations conducted by counsel for respective parties who are experienced in wage and hour class action litigation.  For the foregoing reasons, the parties respectfully request that the Court grant preliminary approval of the proposed Settlement, sign the proposed Order, approve and authorize mailing of the proposed Class Notice, and set a date for a final approval hearing.

Date: November 13, 2024          **Law Office of Corey A. Pingle**

By:          _/ s / Matthew C. Briggs /_
Corey A. Pingle, Esq.
Matthew C. Briggs, Esq.
Attorneys for Plaintiff,
MARTINEZ ANDRE GILES

PLAINTIFF MARTINEZ ANDRE GILES' NOTICE OF MOTION AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS SETTLEMENT - 3:22-CV-03097-MMC