Law Office of Corey A. Pingle
Corey A. Pingle SBN 305289
Email: capingle@pinglelaw.com
Matthew C. Briggs SBN 310449
Email: mbriggs@pinglelaw.com
9550 Warner Ave #250-06
Fountain Valley, CA 92708
Telephone: (657) 514-7060
Facsimile: (650) 394-3132

Attorneys for PLAINTIFF
MARTINEZ ANDRE GILES

UNITED STATES DISTRICT COURT,

NORTHERN DISTRICT COURT OF THE STATE OF CALIFORNIA

MARTINEZ ANDRE GILES, on behalf of himself and on behalf of all persons similarly situated,

Plaintiff,

vs.

CANUS CORPORATION, a California Corporation; PG&E CORPORATION, a California Corporation; and DOES 1 through 50, inclusive,

Defendant.

**Case No.: 3:22-CV-03097-MMC**

**CLASS ACTION**

**[UNOPPOSED]**

**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTERING JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

[Filed concurrently with declaration of Matthew C. Briggs, Declaration of Chantal Soto-Najera, and [PROPOSED] Order]

Hearing Date: May 2, 2025
Hearing Time: 9:00 A.M.
Location: San Francisco Courthouse
Courtroom 7, 19th Floor
450 Golden Gate Ave.
San Francisco, CA 94102

/ / /
/ / /

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Notice is hereby given that on Friday, May 2, 2025, at 9:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 7, 19th floor, of the above-entitled court, located at 450 Golden Gate Ave., San Francisco, CA 94102, Plaintiff MARTINEZ ANDRES GILES ("Plaintiff") on behalf of a proposed Settlement Class will move for final approval of class action settlement and entry of judgment against CANUS CORPORATION and PG&E CORPORATION ("Defendants"). Defendants do not oppose this motion.

As discussed in the accompanying Memorandum of Points and Authorities and attached declarations, Plaintiff and Defendants (collectively, the "Parties") have negotiated a Settlement that provides substantial compensation to workers for their claimed economic losses. The notice fulfills the requirements of Rule 23 and due process requirements. There are no requests for exclusion and no objections. Plaintiff thus respectfully request that the Court grant final approval, direct payments be disbursed to the Plaintiff, to Settlement Class Members, to the Class Administrator, to the LWDA, and to class counsel.

Dated: April 11, 2025

LAW OFFICE OF COREY A. PINGLE

By: / s / *Matthew C. Briggs /*
Corey A. Pingle, Esq.
Matthew C. Briggs, Esq.
Attorneys for Plaintiff,
MARTINEZ ANDRE GILES

2

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTERING JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF CONTENTS

**I. BACKGROUND AND PROCEDURAL HISTORY** ........................................11

**II. MEDIATION, PAYROLL ANALYSIS, AND SUMMARY OF SETTLEMENT** .......12

**A. Final Class Settlement** ........................................................................13

**III. PRELIMINARY APPROVAL, NOTICE AND THE CLASS RESPONSE** ..........14

**IV. FINAL APPROVAL OF THE SETTLEMENT SHOULD BE GRANTED** ..............15

**A. Class Settlements are Subject to Court Review and Approval** ...................15

**B. Class Settlement Approval Has Three Steps** ..........................................15

**C. The Court Should Exercise Discretion to Approve Settlement** ...................16

**D. The Settlement is Fair, Adequate, and Reasonable** ..................................17

**E. The Settlement Satisfies the Ninth Circuit Final Approval Standards** ..........18

1. *Strength of Plaintiff's Case and Risk, Expense, Complexity and Likely Duration of Further Litigation Support Final Approval* ..........................19

2. *Lack of Objection and the Class's Reaction Support Final Approval* ..........20

**V. THE COURT SHOULD APPROVE THE REQUESTED ATTORNEY'S FEE, EXPENSES AND REPRESENTATIVE SERVICE PAYMENTS** ..........................22

**A. A Percentage Attorney's Fee Award is Warranted** .....................................22

**B. 25% of the Gross Settlement Fund is a Reasonable Fee** ...............................23

**C. Ninth Circuit Factors for Evaluating Reasonableness of the Fee Request** ...........26

1. *The Results Achieved Support the Fee* ..................................................26

2. *Strength of Plaintiff' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation* ..................................................................27

3. *The Contingent Nature of the Attorney's Fee and Financial Burden Carried* ...28

4. *Awards in Similar Cases* ..........................................................................29

3

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTERING JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

*5. The Reaction of the Class Supports the Fee Request* …………………………..30

**D. Although Not Required, Class Counsel's Fee Request is Reasonable if Optionally Cross- Checked with the Lodestar…**…………………………………………………….30

**E. Class Counsel's Litigation Expenses Should Be Reimbursed**………………………..33

**F. Class Representative Service Payments Are Reasonable.**.…………………………...33

**G. Claims Administration Fees Are Reasonable.**………………………………………..35

**VI. CONCLUSION.** ……………………………………………………………………...35

4

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTERING JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

**U.S. Supreme Court Cases**

*Boeing Co. v. Van Germert*
444 U.S. 472, 478 (1980) ....................................................................15, 23, 24

*Hensley v. Eckerhart*
461 U.S. 424 (1983)..........................................................................................26

**Ninth Circuit Cases**

*Class Plaintiffs v. City of Seattle*
955 F.2d 1268 (9th Cir. 1992)..........................................................................18

*Dunleavy v. Nadley*
213 F.3d 454, 458 (9th Cir. 2000) ...................................................................16

*Emmons v. Quest Diagnostics Clinical Labs, Inc.*
2017 U.S. Dis. LEXIS 27249 (E.D. Cal. 2017) ..................................................22

*Hanlon v. Chrysler Corp.*
150 F.3d 1011, 1027 (9th Cir. 1998) ...............................................................17

*Harris v. Marhoefer*
24 F.3d 16, 19 (9th Cir. 1994) .........................................................................33

*In re Bluetooth Headset Products Liab. Litig.*
654 F.3d 935, 941-42 (9th Cir. 2011) ..............................................................33

*In Re DJ Orthopedics, Inc. Secs. Litig., No. 01-CV-2238-K (RBB)*
2004 U.S. Dist. LEXIS 11457, at *21 (S.D. Cal. June 21, 2004) ......................33

*In re Mego Fin. Corp. Sec. Litig.*
213 F.3d 454, 459 (9th Cir. 2000) ...................................................................27

*Linney v. Cellular Alaska Partnership*
151 F.3d 1234, 1238 (9th Cir. 1998) ...........................................................16 ,27

*Mangold v. California Public Utils. Comm'n*
67 F.3d 1470, 1478 (9th Cir. 1995) ..................................................................22

*Moore v. Jas. H. Matthews & Co.*
682 F.2d 830, 839 (9th Cir. 1982)....................................................................31

5

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTERING JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

*Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco* 688 D.2d 615, 625, (9th Cir. 1982), cert. denied (1983) 459 U.S. 1217)……..……..…..…16, 17, 27

*Powers v. Eichen* 229 F.3d 1249, 1258 (9th Cir. 2000) ……..……………………………………..……………26

*Rodriguez v. West Publ'g Corp.* 563 F.3d 948, 965 (9th Cir. 2009) ………..……………………………………….…..……17, 18, 33

*Staton v. Boeing* 327 F. 938, 952 (9th Cir. 2003) ..…………………......……..……………………...……15, 24, 31

*Torrisi v Tucson Elc. Power Co.* 8 F.3d 1370, 1375-76 (9th Cir. 1993) ..…………………......……..………..……………………17

*Vizcaino v. Microsoft Corp.* 290 F.3d 1043 (9th Cir. 2002) ..…………………......……..….…………..…22, 24, 25, 26, 29, 32

*Williams v. MGM-Pathe Communications Co.* 129 F.3d 1026 (9th Cir. 1997) ..…………………......……..…………….……...……….……24

*Wininger v. SI Mgmt, L.P.* 301 F.3d 1115 (9th Cir.) ..…………………….…………......……..……………………....…………….……24

**Sixth Circuit Cases**

*Wooldridge v. Marlene Industries Corp.* (6th Cir. 1990) 898 F.2d 1169, 11..………………......………………......……..…………..……….31

**Seventh Circuit Cases**

*Skelton v. General Motors Corp.* 860 F.2d 250, 252 (7th Cir. 1988) ..………………......………………......……..……..……………29

**Eleventh Circuit Cases Page**

*Norman v. Housing Auth.* 836 F.2d 1292, 1304 (11th Cir. 1988) ..………………......………………......…………………..……31

**Federal District Court Cases**

*Barbosa v. Cargill Meat Solutions Corp.* 297 F.R.D. 431, 451 (E.D. Cal. July 2, 2013) ..………………………….…......……….…………31

6

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTERING JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

*Birch v. Office Depot, Inc.*
2007 U.S. Dist. LEXIS 102747 (S.D. Cal. Sept. 28, 2007) ..………………………......………..…29

*Boyd v. Bechtel Corp.*
485 F. Supp. 610, 624 (N.D. Cal. 1979) ……………..…….………………………..…...…………..21

*Brown v. American Honda Motor Co., Inc.*
2010 U.S. Dist. LEXIS 145475 at *49 (C.D. Cal. July 29, 2010) ……………..…………….…..….21

*Dennis v. Kellog Co., 09-CV-1786-L WMC*
2013 W.L. 6055326, at *7 (S.D. Cal. Nov. 14, 2013) ……………………………..………...…..….25

*Deriam v. Saks & Co., No. 14cv1921 JM(JLB)*
2015 U.S. Dist. LECIS 181071 (S.D. Cal. Dec. 3, 2015) ………………...……………….…..……..33

*Garner v. State Farm Auto Ins. Co., No. CV 08 1365 CW (EMC)*
2010 U.S. Dist. LEXIS 49477, *21 (N.D. Cal. April 22, 2020) …………………..……..….….…..…17

*Glass v. UBS Financial Services, Inc., No. 06-4066-MMC*
2007 W.L. 221862 (N.D. Cal. Jan. 26, 2007) …………………………………...……..……...…30

*Green v. Gino Morena Enters., Ltd. Liab. Co., No. 13cv1332 JM(NLS)*
(S.D. Cal. Nov. 4, 2014) 214 U.S. Dist. LEXIS 156072……………………….…......………...….34

*Hopson v. Hanesbrands, Inc.*
2009 U.S. Dist. LEXIS 33900 (N.D. Cal. Apr. 3, 2009) ………………………….……………..……31

*In Re Activision Sec. Litig.*
723 F.Supp. 1373, 1377 (N.D. Cal. 1989) …………………..…………………….…………..……23, 26

*In re Heritage Bond Litig. V. U.S. Trust Co. of Tex., N.A., No. 02-ML-1475 (RCx)*
2005 U.S. Dist. LEXIS 13627, at *27 (C.D. Cal. June 10, 2005) ……………………………..….26, 30

*In re: Omnivision Techs.*
559 F.Supp.2d 1036, 1043 (N.D. Cal. 2007) ………………………..………..............………..…21

*In Re Oracle Secs. Litig.*
131 F.R.D. 688, 689 (Walker, J.) (N.D. Cal. 1990) …………………….……………..…...…….23

*In re Pacific Enterprises Security Litigation*
47 F.3d 373, 379 (1995 U.S. App. LEXIS 2330) ……………………………………….……….……25

*In re Quantum Health Resources, Inc.*
962 F.Supp. 1254, 1257 (C.D. Cal. 1997) ……………………………..………….…….…….28, 29

7

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTERING JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

*Inglais v. Hallmark Retail, Inc., CV08-04342*
2009 U.S. Dist. LEXIS 131078 (C.D. Cal. Oct. 16, 2009) ……………………..……….…....………29

*Lopez v. Youngblood, No. 07-0474-DLB*
2011 W.L. 10483569 (E.D. Cal. Sept. 2, 2011) ……………………………………………...……….31

*Martin v. AmeriPride Servcs.*
2011 U.S. Dis. LEXIS 61796, at *21 (S.D. Cal. June 9, 2011) ……………………………….…..…….21

*Murillo v. Pac. Gas & Elc. Co.*
266 F.R.D. 468 (E.D. Cal. 2010) ..……………………………………………………………………16

*Reed v. 1-800 Contacts, Inc., No. 12-cv-02359 JM (BGS)*
2014 U.S. Dist. LEXIS 255 (S.D. Cal. Jan. 2, 2014) ..…………………………….…………………..…33

*Rippee v. Boston Mkt. Corp., No. 05cv1359*
2006 U.S. Dist. LEXIS 101136 (S.D. Cal. Oct. 10, 2006) ………………………………….....……29

*Rodriguez v. West Publishing Corp., No. CV-05-3222 R(MCx)*
U.S. Dist. LEXIS 74849 at 32-33 (C.D. Cal. Sept. 10, 2007) ……………………….........16, 18, 33

*Singer v. Becton Dickinson & Co.*
2010 U.S. Dist. LEXIS 53416 at *22-23 (S.D. Cal. June 1, 2010) ………………………….…..……29

*Smith v. CRST Van Expedited, Inc., 10-CV-1116-IEG WMC*
2013 W.L. 163293, *5 (S.D. Cal. Jan. 14, 2013) ……………………………………….….…...…25, 27

*West v. Circle K Stores, Inc., No. Civ. S-04-0438*
2006 U.S. Dist. LEXIS 76558, at *25 (E.D. Cal. Oct. 19, 2006) ……………………...……….…..12

**California Supreme Court Cases**

*Laffite v. Robert Half International, Inc.*
1 Cal.5th 480, 503 (2016) ……………………………………………………….…………..……….…22

*PLCM Group, Inc. v Drexler*
22 Cal.4th 1084, 1095 (2000) …………………………………..…………………..………..……..31

*Serrano v. Priest ("Serrano III")*
20 Cal.3d 25, 35, 141 (2000) ……………………………………..…………………….…….….……...24

///
///
///

8

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTERING JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

**California Court of Appeal Cases**

*Chavez v. Netflix, Inc.*
162 Cal.App.4th 43, 66 (2008) ……25

*Lealao v. Beneficial California, Inc.*
82 Cal.App.4th 19, 27 (2000) ……24

**California Labor Code**

§ 201……11

§ 203……11

§ 226.4……11

§ 226.7……11

§ 512……11

§ 1194……11

§ 1197……11

§ 2698……11

§ 2699……11

§ 2753……11

§ 2810……11

§ 2802……11

**California Business and Professions Code**

§ 17200……11

**Federal Rules of Civil Procedure**

Rule 23……15, 16

/ / /
/ / /

9

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTERING JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

**Secondary Sources**

Attorney Fee Awards
1 Alba Conte (3d ed. 2004) § 1.09……………………………..…………………..……..16, 29

Manual for Complex Litigation
(4th ed. 2004) § 21.61 at 308……………………………………………..……………………16

Common Funds and Common Problems: Fee Objections and Class Counsel's Response
Reagan W. Silber and Frank E. Goodrich, (1998) 17 Rev. Litig. 525, 546……………..………..…25

Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules
T. Willging, L. Hooper and R. Niemic (1996) 90……………..……………….……..………....25

The Rutter Group California Practice Guide: Civil Trials and Evidence………………..…………24
§ 17:172.3, Wagner Fairbank, and Epstein (Rutter 2005)

William Rubenstein, Alba Conte & Herbert Newberg
4 Newberg on Class Actions (5th ed. 2014) §§ 13:39, et seq. …………………...………………16

10

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTERING JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff filed his original complaint in Contra County Superior Court Case Number C22-00496 on February 24, 2022, for an action on behalf of current and former non-exempt employees in California four years prior to the filing of the complaint through the present. On May 26, 2022, Defendants removed this case to this Court and filed their answers. On June 23, 2022, Defendants filed their Motion for Judgement on the Pleadings. On August 16, 2022, this court granted Defendants' Motion for Judgement on the Pleadings with leave to amend by September 13, 2022. Plaintiff filed his second amended complaint on September 13, 2022.

On October 12, 2022, Plaintiff filed his Third Amended Complaint, which is the operative complaint and which the proposed settlement is based upon. The Third Amended Complaint alleges: (1) Unfair Competition in Violation of Cal. Bus. & Prof. Code §§ 17200, Et Seq.; (2) Failure To Provide Required Rest Periods In Violation Of Cal. Lab. Code §§ 226.7 And The Applicable IWC Wage Order; 3. Failure To Provide Accurate Itemized Statements In Violation Of Cal. Lab. Code § 226; 4. Failure To Provide Wages When Due In Violation Of Cal. Lab. Code §§ 201, 202 And 203; 5. Failure To Pay Accrued Sick Pay Wages When Due In Violation Of Cal. Lab. Code §§ 201, 202, And 246; 6. Failure To Reimburse Employees For Required Expenses In Violation Of Cal. Lab. Code § 2802; 7. Wrongful Termination In Violation Of Public Policy; And 8. Civil Penalties Pursuant to Labor Code 2699, Et. Seq., 210, 221, 226(A), 226.7, 558(A)(1)(2), 2802, California Code of Regulations, Title 8, Section 11040, Subdivision 5(A)-(B). Defendants denied the allegations and contended that employees were properly compensated.

On January 19, 2023, the Parties participated in a successful mediation session before

11

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTERING JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

respected class action mediator Jeffrey Krivis. During this mediation, the Parties reached the basic terms of a settlement, which was later finalized in the Settlement Agreement.

On **November 22, 2024**, the Court heard and granted Plaintiff' unopposed motion for preliminary approval of the class settlement and directed sending of notices to class members, finding the proposed settlement to be fair and reasonable. ECF No. 101.

## II.    MEDIATION, PAYROLL ANALYSIS, AND SUMMARY OF SETTLEMENT

Class counsel has investigated the facts of the Action and the named Plaintiff and settlement class members' claims, including through informal discovery, informal disclosures between the Plaintiff, and Defendants. Class counsel engaged the services of Berger Consulting Group to analyze the payroll data and other information obtained through these processes, to calculate damages models for the class. See Briggs Decl., P 5 ¶¶15,16. Furthermore, the Parties engaged in extensive negotiations and exchange of data, documents, information on and leading up to mediation on January 19, 2023, with mediator Jeffrey Krivis, which was successful. As a result, class counsel have concluded that the settlement terms are fair, reasonable, and adequate and are in the best interest of the settlement class and the workers in light of all known facts and circumstances, including the likely damages, risk of significant delay, risk that the Action would not proceed on a collective or class action basis, and defenses asserted by Defendants.

Defendants deny each and every one of the claims in the Action. Nevertheless, Defendants have concluded that further litigation would be protracted and expensive. Thus, Defendants have determined that it is desirable and beneficial that the Action be settled in the manner and upon the terms and conditions set forth in this settlement before the Court.

///

///

**A. Final Class Settlement**

In consideration for final settlement of the Action and subject to final Court approval and entry of judgment, Defendants have agreed to pay the sum of up to **$440,000.00**, into a Settlement Fund for payments to the settlement class members, from the gross settlement **$7,500.00**, will be allocated to PAGA penalties, **$10,000.00**, service award to the sole named Plaintiff, and class counsel's attorney fees and costs, and administrative costs.

The Net Settlement Fund of **$300,783.58**, (previously estimated to be $296,625.00) available to pay Class Members includes an individual service award of $10,000.00, to Plaintiff and a Twenty-Five Percent (25%) share of the PAGA payment, and was determined by subtracting class counsel attorneys' fees ($110,000.00), litigation costs ( currently estimated to be **$716.42**, (previously estimated to be $475.14) administration costs [$8,500.00 (previously estimated to be $6,250.00)], and LWDA payment ($7,500.00), from the Gross Settlement Fund ($440,000.00). Based upon the calculations stipulated in the Settlement, the highest individual settlement payment to be paid to any Settlement Class Member will be approximately $3,533.10, and the average individual settlement payment to be paid to any Settlement Class Member will be approximately $1,806.82. Soto-Najera Decl. p. 5, ¶ 16. Note these amounts should be higher as the net settlement fund was previously estimated to be less than now estimated.

The proposed Settlement provides Class Members with substantial compensation based upon duration of employment, hours of work, and actual payroll data calculations, as shown in the chart below.

| **Totals Breakdown** | |
|---|---|
| Gross Settlement Fund | $440,000 |
| Attorney Fees (25% of fund) | ($110,000) |
| Litigation Costs Reimbursement | ($716.42) |
| Plaintiff's Service Payments | ($10,000) |
| PAGA Payment (75% to LWDA) | ( $7,500) |
| PAGA Payment (25% to Employees) | ( $2,500) |
| Class Administrator Costs | ( $8,500) |
| **Net Settlement Payments to Class*** | **$300,783.58** |

**Includes named plaintiff service awards and 25% PAGA payment under Lab. Code § 2699(i).*

The claims administrator's costs associated with the administration of this matter are $8,500.00. This includes all costs incurred to date, as well as estimated costs involved in completing the settlement distribution. Soto-Najera Decl. p. 5, ¶ 18

## III. PRELIMINARY APPROVAL, NOTICE AND THE CLASS RESPONSE

On November 22, 2024, Plaintiff' motion for preliminary approval of the class settlement now before the Court was heard. The Court then found the settlement to be fair, adequate and reasonable, and entered its order granting preliminary approval of the class settlement and directing notices be mailed to class members. ECF No. 101.

On December 20, 2024, the claims administrator sent notices to one hundred and sixty-five (165) Class Members and one hundred and eighty-one PAGA Class members. The notice advised Class Members of the pendency of this Class Action and: (i) included a summary of the claims, claim period, and procedural history; (ii) explained the benefits of settlement to Class Members; (iii) explained Class Members' rights and options regarding making a claim to get a settlement payment, opting out, and objecting; (iv) explained the consequences of failing to

return a claim form; (v) explained the establishment of the $440,000.00, Gross Settlement Fund; (vi) listed proposed payments to named Plaintiff, Class Members, class counsel for attorneys' fees and costs, administrative costs, and the LWDA; (vii) explained the release of claims; (viii); gave notice of the date and time of the final settlement approval hearing; and (ix) gave notice of the opportunity to review the pleadings and other records in this litigation. The notice included the claims administrator's website, mailing address and toll-free telephone number.

Only seven (7) of the notice packets was returned undeliverable and re-mailed. The claims administrator received zero (0) requests to be excluded from the class and zero (0) objections to the settlement. The claims administrator reports no disputes. The class administrator received a total of 181 timely claims, which equates to a claim rate of 100% of Class Members and 100% of the Settlement Fund. The deadline for class members to submit a claim, request for exclusion, and/or objection was February 14, 2025. Decl. Soto-Najera, pp. 3-4, ¶¶ 5-14.

## IV.   FINAL APPROVAL OF THE SETTLEMENT SHOULD BE GRANTED

### A.      Class Settlements are Subject to Court Review and Approval

"A class action shall not be dismissed, settled, or compromised without the approval of the Court, and notice of the proposed dismissal, settlement, or compromise shall be given as the Court directs." Fed. R. Civ. P. Rule 23(e). A class action settlement is approved when the district court finds it is fair, adequate, and reasonable. Rule 23(e)(1)(C); *Staton v. Boeing* (9th Cir. 2003) 327 F. 938, 952.

### B.      Class Settlement Approval Has Three Steps

Rule 23(e) settlement approval includes three steps: (1) preliminary approval of the proposed settlement; (2) dissemination of a notice of the settlement to the class; and (3) a formal

fairness hearing at which counsel may introduce evidence and argument supporting the fairness, adequacy, and reasonableness of the Settlement, and class members may be heard. *Murillo v. Pac. Gas & Elc. Co.* (E.D. Cal.2010) 266 F.R.D. 468. This procedure safeguards class members' due process rights and enables the Court to guard class interests. *See* William Rubenstein, Alba Conte & Herbert Newberg, 4 Newberg on Class Actions (5th ed. 2014) ("*Newberg*"), §§ 13:39, *et seq.*

The first two steps are now complete. The first step was completed on November 22, 2024, when the Court preliminary approved the settlement. The second step—dissemination of the class notice—commenced on December 20, 2024, and concluded on February 14, 2025. The third step is the April 25, 2025, final approval hearing, when the Court determines whether the settlement is fair, adequate, and reasonable.

**C. The Court Should Exercise Discretion to Approve Settlement**

Deciding whether a settlement is fair, reasonable, and adequate is committed to the Court's sound discretion. *Dunleavy v. Nadley* (9th Cir. 2000) 213 F.3d 454, 458 (citing *Linney v. Cellular Alaska Partnership* (9th Cir. 1998) 151 F.3d 1234, 1238; Manual for Complex Litigation (4th ed. 2004) § 21.61 at 308; *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco* (9th Cir. 1982) 688 D.2d 615, 625, cert. denied (1983) 459 U.S. 1217).

Although the Court has discretion to determine whether a proposed class settlement is fair, the Ninth Circuit has "long deferred to the private consensual decision of the parties." *Rodriguez v. West Publ'g Corp.* (9th Cir. 2009) 563 F.3d 948, 965 (citing *Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011, 1027. The Court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the

extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco, supra,* 688 D.2d 615, 625, cert. denied (1983) 459 U.S. 1217. "In evaluating whether the settlement is fair and adequate, the Court's function is not to second guess the settlement's terms." *Garner v. State Farm Auto Ins. Co.*, No. CV 08 1365 CW (EMC) (N.D. Cal. April 22, 2020) 2010 U.S. Dist. LEXIS 49477, *21.

A "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon, supra,* 150 F.3d at 1027.

**D.     The Settlement is Fair, Adequate, and Reasonable**

The Court's determination of whether a proposed settlement is fair, adequate, and reasonable involves a balancing of factors. These factors may include, among others: "the strength of plaintiff's case; the risk, expense, complexity, and the likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extend of discovery completed; and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v Tucson Elc. Power Co.* (9th Cir. 1993) 8 F.3d 1370, 1375-76 (citation omitted). All but the last of these factors were addressed in the preliminary approval motion and accompanying declaration. ECF Nos. 90, 93, 97, 98, 100. The law favors settlement, particularly in class actions and other complex cases, where substantial

resources can be conserved by avoiding the time, cost, and rigors of litigation. See *Class Plaintiffs v. City of Seattle* (9th Cir. 1992) 955 F.2d 1268.

"In the Ninth Circuit, a court affords a presumption of fairness to a settlement if: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Rodriguez v. West Publishing Corp.*, No. CV-05-3222 (C.D. Cal. Sept. 10, 2007) U.S. Dist.

**E. The Settlement Satisfies the Ninth Circuit Final Approval Standards**

At the preliminary approval stage, the Court was provided information satisfying all but the last *Rodriquez* factor. Based on that information, the Court preliminarily found the settlement to be fair, adequate, and reasonable.

To recap, the proposed Settlement Agreement arises out of serious, informed, and non-collusive negotiations facilitated by mediator Jeffrey Krivis, preceded by a year of active litigation and many months of arm's-length negotiations. *See* Briggs Decl., p. 1, ¶¶ 3, 4. The named Plaintiff has prosecuted the Action on behalf of the class with vigor and dedication since its inception, including persevering against Defendants' onslaught of litigation including a motion for judgment on the pleadings and a motion to dismiss to bring the operative third amended complaint which now has secured the class this requested settlement. *See* Briggs Decl., p. 7, ¶ 23. The named Plaintiff was likewise actively engaged- producing numerous employment and payroll documents, regularly communicating with class counsel up to and including evaluating and approving the proposed settlement. Plaintiff Giles was consulted on, and support, the terms of the settlement, and has expressed his continued willingness to protect the class until the settlement is approved and its administration completed. *See* Briggs Decl., pp. 7-8¶ 24.

Both class counsel and Defendants' defense counsel are experienced in similar litigation. Class counsel has continuously maintained a full-time private legal practice in California since 2022 with a focus on individual and class action employment litigation, has litigated numerous actions in federal and state courts for both plaintiff-employees and defendant employers. *See* Briggs Decl. pp 3-4¶ 10. Counsel on both sides, having prosecuted and defended numerous wage and hour class and representative action cases, share the view this is a fair and reasonable settlement in light of the complexities of the case, current law, and of the uncertainties of potential outcomes. Settlement is based upon a realistic assessment of the strengths and weaknesses of the parties' respective cases, extensive legal and factual research, substantial discovery, and extensive briefing of many dispositive issues. *See* Briggs Decl.pg. 3¶ 6.

The fourth *Rodriquez* factor, the number of objectors, is now satisfied because no objections have been asserted and no workers requested to be excluded from the settlement, entitling the parties' settlement to a presumption of fairness. *See* Soto-Najera Decl. , p 4¶¶ 11-14.

1. *Strength of Plaintiff' Case and Risk, Expense, Complexity and Likely Duration of Further Litigation Support Final Approval*

Plaintiff believes in the merits of his case. Plaintiff also recognizes the inherent risks and uncertainty of litigation, including that the Class could receive nothing, and understand the benefit of providing a significant settlement sum now. The specific risks include: (i) denial of class certification; (ii) if class certification is granted, the Court may later decertify the class; (iii) the Court grants summary judgment or summary adjudication; (iv) the need for a unanimous jury; (v) the possibility of an unfavorable or less favorable result at trial; (vi) the possibility of post-trial motions may result in an unfavorable or less favorable result at trial; (vii) the possibility of an

19

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTERING JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

unfavorable or less favorable result on appeal; and (viii) the certainty that the process will continue to be lengthy.

Plaintiff's claims involve complex and disputed legal issues and fact-specific arguments which the parties have litigated fiercely since the inception of the Action. Defendants have raised defenses to Plaintiff's claims that presents the possibility Plaintiff's claims may not be certified or may fail on the merits. If either of Plaintiff's major claims fails, that (i) the class members were afforded rest breaks; or (ii) sick pay wages were properly paid, the Plaintiff and Class Members could be left with nothing at all.

Proceeding with continued litigation would impose a significant risk of no recovery. If the proposed settlement had not been achieved, continued litigation of the claims would take substantial time and possibly confer no benefit upon the Class. By contrast, the settlement will yield a comparably prompt, certain, and substantial recovery for the Class, without need for additional time or judicial resources.

In the face of these risks and uncertainties, the Parties agreed to a compromise and certain establishment of a Gross Settlement Fund of $440,000.00. Participating Class Members will receive average payments of approximately $1,806.82, with individual payments as high as $3,533.10, depending upon the damages models determined by class counsel's expert accountant and economist. See declaration of Soto-Najera.

*2. Lack of Objection and Class Reaction Supports Final Approval*

The deadline to postmark an objection or request for exclusion expired on February 14, 2025. Through the present, no objections have been received by the class administrator, by counsel for the parties, or filed with the Court. The settlement enjoys affirmative participation of 100% of the Class Members claiming more than 100% of the Net Settlement Fund. The absence of any

20

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTERING JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

objections and requests to be excluded supports a strong presumption of fairness, adequacy, and reasonableness. *Martin v. AmeriPride Servcs.* (S.D. Cal. June 9, 2011) 2011 U.S. Dis. LEXIS 61796, at *21; see also *In re: Omnivision Techs.* (N.D. Cal. 2007) 559 F.Supp.2d 1036, 1043 ["By any standard, the lack of objection of the Class Members favors approval of the settlement."]; see also *Brown v. American Honda Motor Co., Inc.* (C.D. July 29, 2010) 2010 U.S. Dist. LEXIS 145475 at *49 ["The comparatively low number of opt-outs … indicates that generally, class members favor the proposed settlement and find it fair."]. The lack of any objections provides persuasive evidence of its reasonableness. *Boyd v. Bechtel Corp.* (N.D. Cal. 1979) 485 F. Supp. 610, 624. Class Members and individual settling workers have convincingly embraced the settlement.

Class counsel is convinced the Settlement is in the best interests of the Class and individual settling workers based upon a detailed knowledge of the issues presenting in the Action and the negotiations. The length and risks of trial and the perils of continued litigation that affect the value of the claims were all carefully weighed. In addition, the affirmative defenses asserted by Defendants, the prospect of a potentially adverse summary judgment ruling, the difficulties of complex litigation, the lengthy process of establishing specific damages and various possible further delays and appeals, were also carefully weighed and considered by class counsel in arriving at the proposed settlement. *See* Briggs Decl., p. 8, ¶ 28.

Class counsel respectfully requests the Court find the proposed settlement to be fair, adequate, and reasonable and grant final approval and enter final judgment accordingly.

///

///

///

21

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTERING JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

## V. THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES, EXPENSES AND REPRESENTATIVE SERVICE PAYMENTS

### A. A Percentage Attorney's Fee Award is Warranted

Federal courts apply state law to determine both the right to fees and the method of calculating them for diversity and other cases involving substantive state law claims. See *Vizcaino v. Microsoft Corp.* (9th Cir. 2002) 290 F.3d 1043; *Mangold v. California Public Utils. Comm'n* (9th Cir. 1995) 67 F.3d 1470, 1478; *Emmons v. Quest Diagnostics Clinical Labs, Inc.* (E.D. Cal. 2017) 2017 U.S. Dis. LEXIS 27249.

During the pendency of the Action, the California Supreme Court affirmed that trial courts properly grant attorneys' fees in a common fund case based on a percentage of the recovery. *Laffite v. Robert Half International, Inc.* (2016) 1 Cal.5th 480, 503. A fee award based on a percentage of the common fund recovery is proper here as it spreads the attorneys' fees among all beneficiaries of the fund on a pro-rata basis, aligns the incentives between class counsel and the Class, is a better approximation of the market conditions in a contingency fee case, and encourages class counsel to seek early settlement and avoid unnecessarily prolonging the litigation. *Id.* The Court also approved the use of a lodestar cross-check at the option of the trial court to double check "the reasonableness of the percentage fee through a lodestar calculation." *Id.* At 504.

With the guiding principle that early class action settlements are favored and may not diminish an award of attorneys' fees, class counsel submits the $110,000.00, attorney's fee request for the class settlement should be awarded, in light of the substantial hours expended since the case's inception to achieve this result, the litigation risks and complexities of prosecuting these cases, the contingent nature of any fee, experience in handling cases of this type, the fees commonly awarded in these cases, and the vindication of the Class Members' rights by securing a

$440,000.00, gross settlement fund, providing for average payments to Class Members of approximately $1,806.82, with individual payments as high as $3,533.10.

Additionally, this Court has held that the percentage method is far preferable to the lodestar method because: (1) it aligns the interests of class counsel and the class; (2) it encourages efficient resolution by providing early, yet reasonable, settlement; and (3) it reduces demands on judicial resources. *In Re Oracle Secs. Litig.* (N.D. Cal. 1990) 131 F.R.D. 688, 689 (Walker, J.) [noting the lodestar method has been "thoroughly discredited by experience"]; *In Re Activision Secs. Litig., supra,* 723 F.Supp. at 1375, 1378-79.

**B. 25% of the Gross Settlement Fund is a Reasonable Fee**

California state and federal courts have long recognized that a percentage of the total settlement, not the amount claimed, is an appropriate method for determining attorney's fees in cases such as this involving a specified monetary fund. Under the "common fund" doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Germert* (1980) 444 U.S. 472, 478. The Supreme Court explained:

> The doctrine rests on the perception that persons who obtain the benefits of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense. Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionally among those benefited by the suit.

*Id.* (citation omitted). Thus, the common fund doctrine ensures that each member of the class contributes proportionally to the payment of attorney's fees recovered from monetary payments that the prevailing party recovered in the lawsuit. "Put another way, in common fund cases, a variant of the usual rule applies, and the winning party pays his or her own attorneys' fees; in fee

shifting cases, the usual rule is rejected and the losing party covers the bill. *Staton, supra,* 327 F.3d at 967, citing *Wininger v. SI Mgmt, L.P.* (9th Cir.) 301 F.3d 1115.

The common fund doctrine is predicated on the principle of preventing unjust enrichment. When a litigant's efforts create or preserve a fund from which others derive benefits, the court may spread litigation costs proportionally among all beneficiaries to compensate those who created the fund.

The Rutter Group *California Practice Guide: Civil Trials and Evidence* acknowledges the applicability of the common fund doctrine and describes it as follows:

> Where the lawsuit results in the recovery of a fund or property benefitting others as well as Plaintiff (e.g. a class action), the court has inherent equitable power to order Plaintiff's attorney's fees paid out of the common fund or property. [See *Serrano v. Priest ("Serrano III")* (2000) 20 Cal.3d 25, 35]

Wagner Fairbank, and Epstein, *California Practice Guide: Civil Trials and Evidence* (Rutter 2005) at 17:172.3. "Percentage fees have traditionally been allowed in such common fund cases." *Lealao v. Beneficial California, Inc.* (2000) 82 Cal.App.4th 19, 27. Both California and federal cases agree that percentage fees are awarded on the basis of the entire settlement rather than the claims payments made to the class. *Lealao, supra,* states that a "pure percentage fee in a traditional common fund case…maybe calculated on the basis of the total fund made available rather than the actual payments made to the class." (*Id.* 82 Cal.App.4th at 51, citing *Boeing Co. v. Van Gemert, supra,* 444 U.S. at 478, and *Williams v. MGM-Pathe Communications Co.* (9th Cir. 1997) 129 F.3d 1026.

Ninth Circuit cases discuss the benchmark rate of 25% as a starting point for common fund fee analysis, with 20% to 30% being the usual range. *Vizcaino, supra,* 290 F.3d at 1047. Assessing

an appropriate fee based on a percentage of the fund involves taking into account "all of the circumstances of the case." *Id.*

"In common fund cases, attorneys whose compensation depends on their winning the case [...] must make up in compensation in the cases they win for the lack of compensation in the cases they lose." *Vizcaino v. Microsoft Corp., supra,* 290 F.3d at 1051.

Some courts have found an award of 33% of a common fund represents the "benchmark" when applying California law. *Smith v. CRST Van Expedited, Inc.* (S.D. Cal. Jan. 14, 2013) 10-CV-1116-IEG WMC, 2013 W.L. 163293, *5 ["These percentages compare favorably with both California (33%) and federal (25%) benchmarks"]; *Dennis v. Kellog Co.* (S.D. Cal. Nov. 14, 2013) 09-CV-1786-L WMC, 2013 W.L. 6055326, at *7.

Several studies have found the median common fund fee award is approximately one-third of the total settlement fund. See, e.g., *Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43, 66, n.11 [numerous studies show "fee awards in class actions average around one-third of the recovery"]; Reagan W. Silber and Frank E. Goodrich, Common Funds and Common Problems: Fee Objections and Class Counsel's Response (1998) 17 Rev. Litig. 525, 546; T. Willging, L. Hooper and R. Niemic, Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules, 90 (1996) [finding attorney's fees in class action litigation "were generally in the traditional range of approximately one-third of the total settlement"].

Class counsel's attorney's fee request of **$110,000.00**, for the class settlement represents approximately 25% of the Gross Settlement Fund of **$440,000.00**, and is justified here given the facts, the procedural and substantive law complexity, and the risk of undertaking and prosecuting this complex, risky, expensive, and time-consuming litigation on a contingency fee basis since early-2022 for the benefit of workers. *In re Pacific Enterprises Security Litigation* (1995 U.S.

25

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTERING JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

App. LEXIS 2330) 47 F.3d373, 379; *In re Activision Securities Litigation, supra,* 723 F.Supp. at 1375.

This litigation included a separate class counsel filing this case in state court, Defending against a motion for judgement on the pleadings (admittedly unsuccessfully), former class counsel filing a second amended complaint, former class counsel filing a motion to remand this case to state court and defending against a motion to dismiss the second amended complaint. Had class counsel not persevered in obtaining the operative third amended complaint case could have been dead in the water and would not have provided an outcome for the class. Therefore, the Court should consider class counsel's time, effort, expertise, expense, and result in the benefits to class members when deciding the reasonableness of class counsel's attorney's fee request.

**C. Ninth Circuit Factors for Evaluating Reasonableness of the Fee Request**

Whether a district court uses a common fund or a lodestar method, the main inquiry is whether the end result is reasonable. *Powers v. Eichen* (9th Cir. 2000) 229 F.3d 1249, 1258. The Ninth Circuit has articulated five factors as pertinent criteria for evaluating the reasonableness of a fee request: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of the work; (4) the contingent nature of the fee and the financial burden carried by the Plaintiff; and (5) awards made in similar cases. See *Vizcaino v. Microsoft Corp., supra,* 290 F.3d 1043, 1048-50.

*1. The Results Achieved Support the Fee Request*

The most important factor to consider in granting a fee award is the success obtained. *In re Heritage Bond Litig. V. U.S. Trust Co. of Tex., N.A.*, No. 02-ML-1475 (RCx), (C.D. Cal. June 10, 2005) 2005 U.S. Dist. LEXIS 13627, at *27 (citing *Hensley v. Eckerhart* (1983) 461 U.S. 424). In the face of uncertainties associated with continued litigation of Plaintiff's claims, and Defendants'

vigorous denials and affirmative defenses, there is no question the results achieved are more than fair, adequate and reasonable to the Class. Class counsel successfully negotiated a common Gross Settlement Fund of $440,000.00 for 165 workers in the Settlement Class and 181 workers in the PAGA class as well as attorney's fees and costs.

A settlement must not be judged against a speculative measure of what might have been achieved, nor need a settlement provide 100% of the potential damages to be fair and reasonable. *Linney v. Cellular Alaska Pshp, supra,* 151 F.3d 1234, 1242; *In re Mego Fin. Corp. Sec. Litig.* (9th Cir. 2000) 213 F.3d 454, 459. When analyzing settlement, a court should examine "the complete package taken as a whole," the amount "is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco, supra,* 688 F.2d 615, 628. The adequacy of the amount recovered must be judged as a "yielding of absolutes… Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation…" *Id.* At 624 (citation omitted), "[I]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not … render the settlement inadequate or unfair," *Id.* At 628. The settlement here provides an excellent recovery for Class Members and this factor strongly supports approving the fee request.

*2. Strength of Plaintiff' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation.*

Plaintiff and class counsel believe in the merits of the workers' claims but recognize the inherent risks and uncertainty of continued litigation, and understand the benefits of providing a significant recovery to the Class now without risking denial of class certification, an unfavorable

27

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTERING JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

summary judgment, and all other risks in complex litigation generally and this case in particular. (*See* Section IV.E.1, *supra.*)

*3. The Contingent Nature of the Attorney's Fee and Financial Burden Carried*

"[A]n attorney should be compensated both for services rendered and for the risk of loss or nonpayment assumed by accepting and prosecuting the case." *In re Quantum Health Resources, Inc.* (C.D. Cal. 1997) 962 F.Supp. 1254, 1257.

Class counsel undertook all risks of this litigation on a contingent basis. Class counsel accepted the risks of dispositive motions, obtaining and maintaining class certification, proving liability and damages at trial, and surviving post-trial motions and appeals. Class counsel faced the risk of litigating this case for years and did, advancing and investing hundreds of thousands of dollars in attorney, professional staff time, experts, and other costs, without pay or reimbursement. To meet responsibilities to the Class, class counsel had to assure at all times the sufficiency of resources to prosecute the Action.

Many contingent fee cases result in no compensation to Plaintiff's counsel because cases are dismissed at the pleading stage, lost at certification, summary judgment or after a trial on the merits, or reversed on appeal. Many hard-fought lawsuits ultimately produce no attorney's fee and no costs reimbursement because of discovery of facts unknown when the case commenced, changes in the law while the case is pending, changes in the status of the parties while the case is pending, or decisions of judges or juries following a trial on the merits, despite tremendous efforts by Plaintiff's counsel.

District courts within the Ninth Circuit recognize, "[t]he rationale behind awarding a percentage of the fund to counsel in common fund cases is the same the justifies permitting contingency fee arrangements in general." *In re Quantum Health Resources, Inc. Sec. Litig.,*

*supra,* 962 F. Supp. at 1257 (citing *Skelton v. General Motors Corp.* (7th Cir. 1988) 860 F.2d 250, 252). "The underlying premise is the existence of risk—the contingent risk of non-payment." *In re Quantum Health Resources, Inc. Sec. Litig., supra,* 962 F. Supp. at 1257. "Because payment is contingent upon receiving a favorable result for the class, an attorney should be compensated both for services rendered and for the risk of loss or nonpayment assumed by accepting and prosecuting the case." *Id.* (citing, 1 Alba Conte, Attorney Fee Awards (3d ed. 2004) § 1.09).

Unlike defense counsel, who were regularly paid a fair-market hourly rate as the litigation ensued, class counsel received no compensation for legal services during this litigation and received no reimbursement for expenses required to prosecute this case. The contingent nature of representation, and the risks of this litigation, fully warrant judicial approval of the attorney's fee request.

*4. Awards in Similar Cases*

The requested fee is low among common fund fee awards, which range from 20% to 50%. Courts often look to fees awarded in comparable cases to determine if a requested fee is reasonable. *Vizcaino, supra,* 290 F.3d at 1030, n.4. In comparable wage and hour lawsuits and settlements California district courts have awarded attorney's fees in percentages far greater than class counsel's fee request. See, e.g., *Singer v. Becton Dickinson & Co.* (S.D. Cal. June 1, 2010) 2010 U.S. Dist. LEXIS 53416 at *22-23 [awarding 33.33% in wage and hour class action]; *Inglais v. Hallmark Retail, Inc.* CV08-04342 (C.D. Cal. Oct. 16, 2009) 2009 U.S. Dist. LEXIS 131078 [33.33% fee in $5.6 million wage and hour class action]; *Birch v. Office Depot, Inc.* (S.D. Cal. Sept. 28, 2007) 2007 U.S. Dist. LEXIS 102747 [40% fee in $16 million wage and hour class action]; *Rippee v. Boston Mkt. Corp.*, No. 05cv1359 (S.D. Cal. Oct. 10, 2006) 2006 U.S. Dist. LEXIS 101136 [40% fee in $3.75 million wage and hour class action]; and *Smith v. CRST Van*

*Expedited, Inc., supra,* 2013 U.S. Dist. LEXIS 6049 *14 [33.33% fee in $2,625,000 wage and hour class action].

If this were individual litigation, a typical contingent attorney's fee arrangement would be one-third (1/3) to 40% of the recovery. Class counsel's fee request is in line with, and lower than, awards in similar cases. This factor also supports class counsel's fee request. *See* Section V.B, *supra*.

*5. The Reaction of the Class Supports the Fee Request*

District courts in the Ninth Circuit may also consider the reaction of the Class when awarding attorneys' fees. *In Re Heritage Bond, supra,* 2005 U.S. Dist. LEXIS 13627, at *48 ["The presence or absence of objections from the class is also a factor in determining the proper fee award"]. Here, the notice stated the total amount the Class and each member would receive in settlement, class counsel's intention to request attorney's fees of $110,000.00, and costs reimbursement, and the manner and deadline to file objections. At the close of the deadline, and to date, even after the deadline, no Class Member has filed any objection to the fee request or settlement terms. The absence of objection supports the fee request.

**D. Although Not Required, Class Counsel's Fee Request is Reasonable If Optionally Cross-Checked with the Lodestar**

To be clear, class counsel seeks approval of attorneys' fees based on a percentage of the common fund recovery, not a lodestar. While a percentage fee may be cross-checked against a lodestar increased by a risk multiplier, courts are not required to engage in this exercise, and many California district courts including this one, have declined to do so. See, e.g., *Glass v. UBS Financial Services, Inc.*, No. 06-4066-MMC (N.D. Cal. Jan. 26, 2007) 2007 W.L. 221862 [finding "no need to conduct a lodestar cross-check [as] [c]lass counsel's prompt action in negotiating

settlement while the state of the law remained uncertain should be fully rewarded"]; *Lopez v. Youngblood*, No. 07-0474-DLB (E.D. Cal. Sept. 2, 2011) 2011 W.L. 10483569 ["A lodestar cross-check is not required in this circuit, and in a case such as this, is not a useful reference"]. Where the cross-check is used, the "calculation need entail neither mathematical precision nor bean-counting" and is not intended to be a "full-blown lodestar inquiry." *Barbosa v. Cargill Meat Solutions Corp.* (E.D. Cal. July 2, 2013) 297 F.R.D. 431, 451. "Where the use of the lodestar method is used as a cross-check, it can be performed with a less exhaustive cataloguing and review of counsel's hours." *Id.*

The lodestar method is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Staton, supra,* 327 F.3d at 965. A reasonable hourly rate is the prevailing rate charged by attorneys of similar skill and experience in the relevant community. *PLCM Group, Inc. v Drexler* (2000) 22 Cal.4th 1084, 1095; *Hopson v. Hanesbrands, Inc.* (N.D. Cal. Apr. 3, 2009) 2009 U.S. Dist. LEXIS 33900. Hours are reasonable if "at the time rendered, [they] would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest." *Moore v. Jas. H. Matthews & Co.* (9th Cir. 1982) 682 F.2d 830, 839. The standard is whether a reasonable attorney-would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Wooldridge v. Marlene Industries Corp.* (6th Cir. 1990) 898 F.2d 1169, 1177; see also, *Norman v. Housing Auth.* (11th Cir. 1988) ["The measure of reasonable hours is determined by the professional's judgment of the time that may be conscionably billed and not the least time in which it might theoretically have been done"]

When a fee must be based on lodestar, a court may adjust it upward by using a positive multiplier to reflect "reasonableness" factors, including (1) quality of representation, (2) class

31

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTERING JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

benefits, (3) complexity and novelty of issues presented, and (4) risk of nonpayment. *In re Bluetooth Headset Products Liab. Litig.* (9th Cir. 2011) 654 F.3d 935, 941-42. Under an optional lodestar cross-check analysis, application of a multiplier would be appropriate in this case based upon the quality representation provided by class counsel, the benefits achieved for Plaintiff and Class Members, the complexity of the issues, and the risks inherent with contingent fee representation of workers.

Here, class counsel's usual hourly rates are $350 per hour for associate attorneys and $450 per hour for principals, which are average in Northern California for complex employment litigation of this type by attorneys of comparable experience prosecuting and defending comparable cases. Class counsel (past and present) have dedicated far more than 180 hours of attorney time to this litigation between its inception and the present day. The hours expended were reasonable in light of the complexity and duration of the litigation. Decl. Briggs, pp. 9 ¶ 30. In a lodestar cross-check range of **$79,134.00**, without the application of any upward multiplier only a multiplier of 1.38 is necessary to obtain the requested fee of **$110,000.00**. Decl. Briggs, pp. 8-9, ¶ 29. Awarding Plaintiff's requested attorney's fees is more than reasonable given the precedent in 9th Circuit. See *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1050-51 (9th Cir.2002) (observing that calculation of lodestar provides check on reasonableness of percentage award; affirming district court's conclusion that fee award of 28% of fund and 3.65 times lodestar amount was reasonable); *Fischel v. Equitable Life Assurance Society of the United States,* 307 F.3d at 1001, 1007 (9th Cir.2002) (finding no error where district court awarded fees under lodestar method and failed to compare lodestar with 25% benchmark). Here, Plaintiff's request is half of the lodestar multiplier check given in *Vizcaino.*

32

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTERING JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

Additionally, Class counsel anticipates at least an additional four (4) hours of travel time as well as two hours of court time to attend the final approval hearing on April 25, 2025.

The professional time spent by class counsel in this litigation was necessary, reasonable, non-duplicative, and yielded positive results for Plaintiff and the Class. Decl. Briggs, p. 9 ¶ 30.

**E. Class Counsel's Litigation Expenses Should Be Reimbursed**

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *West v. Circle K Stores, Inc.*, No. Civ. S-04-0438 (E.D. Cal. Oct. 19, 2006) 2006 U.S. Dist. LEXIS 76558, at *25.

Class counsel (current and former) incurred costs exceeding **$566.42**, to successfully prosecute the Action. Briggs Decl., pp. 6-7, ¶ 18-22. These expenses were necessary to the effective representation of the Class. See *Harris v. Marhoefer* (9th Cir. 1994) 24 F.3d 16, 19; *In Re DJ Orthopedics, Inc. Secs. Litig.*, No. 01-CV-2238-K (RBB) (S.D. Cal. June 21, 2004) 2004 U.S. Dist. LEXIS 11457, at *21. These costs included copying, printing, postage, and travel. Briggs Decl., *Id*.

**F. Class Representative Service Payments Are Reasonable**

A district court may award service payments to named Plaintiff in class actions. *Rodriguez v. West Publi'g Corp., supra,* 563 F.3d at 958-59. The purpose of service payments is to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaking in bringing the action, and sometimes to recognize the willingness to act as a private attorney general." *Id.*

Subject to this Court's approval, class counsel requests the modest sum of $10,000 (i.e. three percent of the common settlement fund) be awarded to the named Plaintiff, for his commitment in prosecuting the Action for three years, his effort, risks undertaken for the payment

33

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTERING JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

of attorney's fees and costs if the Action had been lost, general releases of all claims arising from his employment, stigma upon future employment opportunities for having sued a former employer, as well as the substantial recoveries for every Class Member, and benefits to current and future employees.

This individual $10,000.00, service payment requested is a standard service awards approved by district courts in California. See *Deriam v. Saks & Co.*, No. 14cv1921 JM(JLB) (S.D. Cal. Dec. 3, 2015) 2015 U.S. Dist. LECIS 181071 [approving $10,000 incentive award where class representative "initiated the lawsuit, worked on the lawsuit, undertook the risks associated with litigation, conferred a benefit on absent class members and otherwise adequately class's interests"]; *Reed v. 1-800 Contacts, Inc.*, No. 12-cv-02359 JM (BGS) (S.D. Cal. Jan. 2, 2014) 2014 U.S. Dist. LEXIS 255 [awarding $10,000 where class representative "devoted significant time to pursuing this action and his efforts resulted in a significant settlement award for class members"); *Green v. Gino Morena Enters., Ltd. Liab. Co.*, No. 13cv1332 JM(NLS) (S.D. Cal. Nov. 4, 2014) 214 U.S. Dist. LEXIS 156072 [approving $10,000 where class representatives "assumed the risk of having a judgment entered against them in the event they did not prevail and likewise faced repercussions from being identified as individuals who sued their employer on a class action basis"].

Plaintiff invested much personal time and effort in the investigation—both before and after the Action was commenced—and prosecution, and settlement of the case. Briggs Decl. pp. 7-8, ¶¶ 24-26. Plaintiff took time off work without pay and traveled long distances without reimbursement for meetings, conference calls, and other activities necessary to prosecute the Action and protect the interests of absent class members over several years. *Id.*

The requested service payments are justified, fair and reasonable, particularly in light of the substantial settlement payments to the Class. Defendants do not oppose the payments and there is no opposition by any Class Member, which further supports their reasonableness.

**G. Claims Administration Expenses Are Reasonable**

Class counsel also seeks payment of $8,500.00, to CPT GROUP, the appointed claims administrator. Briggs Decl. p. 9 ¶ 31. CPT GROUP has administered and will continue to administer settlement following final approval, by calendaring settlement payment awards, printing and mailing settlement checks, reporting taxes to the appropriate agencies, and responding to inquiries. *Id*. The requested amount is fair and reasonable and should be awarded.

## VI. CONCLUSION

Plaintiff respectfully requests that the Court: (1) grant final approval of the class settlement according to these terms; (2) authorize and direct the claims administrator to distribute settlement payments to eligible Settlement Class Members, (3) authorize and direct payment of class counsel's attorney's fees and costs reimbursement as requested; (4) authorize and direct payment of $7,500 to the LWDA; (5) authorize and direct payment of $8,500 to CPT GROUP for claims administration; and (6) enter judgment.

Dated: April 11, 2025

**LAW OFFICE OF COREY A. PINGLE**

By: /s/ *Matthew C. Briggs* /
Corey A. Pingle, Esq.
Matthew C. Briggs, Esq.
Attorneys for Plaintiff,
MARTINEZ ANDRE GILES